NELLIE M. CARDALL *vs.* SHARTENBERG'S, INC.

MARCH 18, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action on the case to recover for injuries which were sustained by the plaintiff, in slipping and falling on the wet pavement of a vestibule connecting the interior of the defendant's department store with the sidewalk, and which she alleges were caused by the defendant's negligence in not putting on such pavement, which was then dangerously slippery because of its wetness, temporary floor mats or covers or other protecting materials. The plaintiff had entered the store for the purpose of buying some goods and therefore the defendant owed to her, as an invitee, the duty of using reasonable care to see that the floors of the store, including those of the entrance, were in a safe condition to be walked upon.

At the conclusion of the evidence for both parties at a jury trial, the trial justice, on motion of the defendant, directed a verdict in its favor, solely on the ground that the evidence clearly showed that the floor of the vestibule was properly constructed according to established practice in the construction of floors in such buildings as that of the defendant. Such a verdict was returned accordingly. The plaintiff took an exception to this direction and the case is now before us on a bill of exceptions by her, setting forth this exception and seven other exceptions, which were taken by her to rulings by the trial justice as to the admission of testimony.

The following facts were shown by testimony that was uncontradicted and unimpeached. The plaintiff's slipping and falling occurred on February 19, 1940, as she was leaving, by the more northerly of two vestibules for entrance and exit, the defendant's department store, located in the city of

Pawtucket on Main street, which runs about north and south. In front of that store there was quite a slope down in the street from north to south. The upper part of the store extended over these vestibules, which were, at the time, open on the sidewalk side and paved with a hard substance known as terrazzo, which is a mixture of Portland cement, marble chips, sand and water, with a certain amount of an abrasive in it, called "carborundum" or "alundum". This pavement had been laid in 1939, late in the fall.

In the northern vestibule there was a slope down, from the four doors between the vestibule and the interior of the store, to the sidewalk. On the north side of the vestibule the slope was 3½ to 4 inches in 10½ feet, the distance from the doors to the sidewalk. On the south side of this vestibule the slope was 4½ to 5 inches in 10½ feet, the greater slope on that side being due to the fact that the sidewalk sloped down from north to south. Therefore, to one walking from the east side to the west side of the vestibule, there was a slight and increasing downward slope sideways, from north to south, as well as the greater slope down from east to west.

The plaintiff had been in the store many times after the changes had been made in the vestibules, but could not remember whether she had been there on rainy days during that period of a few months. She nearly always used the southern one; but she thought that she had been through the northern one once and only once during that period and had noticed that the slope was greater there.

On the day of the accident the temperature was just above the freezing point. There was moist snow from about 5:30 a. m. to 7:15 a. m., then sleet and rain until 10:15 a. m., and then moist snow until 4:35 p. m. The plaintiff entered the store at about 12:50 p. m., by the southern vestibule. At that time the vestibule was wet and she was wearing over-shoes of heavy cloth.

She went up to the third floor and soon afterward came down and started to go out through the northern vestibule, using one of the two middle doors there. She was carrying

only a handbag in her hand and an umbrella on her arm. Then, as she was making her second step after passing through the doorway, she fell and received the injuries complained of in this case. She testified that she slipped on the water on the "tile", evidently referring to the terrazzo, and that the tile was very wet and slippery.

A witness, who at the time of the trial was the president of the American Institute of Architects, gave expert testimony for the plaintiff. He said that he had been a practicing architect in this state for about nineteen years, had supervised the actual erection and construction of buildings and had become familiar with building materials of various types, it being a part of his work to see that the specifications were carried out by contractors and subcontractors and that proper materials were used, including the material that went into the entrances of buildings and "the use of the pavement for such entrances."

He testified that terrazzo entrances to buildings were a common type of construction and that just about a year after the plaintiff's accident in the instant case he had examined the floor of the vestibule where the accident had occurred. There was no claim that any change had been made in the interval. He testified that the slipperiness of a terrazzo floor would depend upon how much abrasive material it contained at the surface; that the less of such material there was the more slippery the floor would be; and that he thought that the surface of a piece of terrazzo without any abrasive material in it would be very smooth, hard and slippery.

He testified also that the proportion of abrasive in the surface of such a floor could be determined by looking at it and examining the particles and the colors at the surface; that he had so examined that surface and had also used a small knife on the particles there and had tried the floor's reaction under his feet, apparently to find out how slippery it was as a means of determining how much abrasive was in the surface; and that his examination had proved to him that there

was very little abrasive material, if any, in that floor. His conclusion was that in that surface it would not go over 4% or 5%, approximately. He also testified that the presence of water on the floor would tend to make it more slippery. His testimony was in support of the allegation in the plaintiff's declaration that at the time of her fall the floor was dangerously slippery because of its wetness. At the end of the testimony for the plaintiff a motion for a nonsuit was denied.

For the defendant there was testimony that the use of terrazzo for floors of entrances to buildings had become very common and was standard practice. A man who was a member of the firm that had the contract for making the alterations in the defendant's store, as a part of which the terrazzo floors in the entrance vestibules were laid, testified that in the specifications was the following: "Furnish and lay for entrance vestibules best quality 1½ inch Terrazzo with 40 per cent alundum mix, all to be thoroughly polished on completion."

The superintendent of the firm that specialized in marble tile and terrazzo work and had the subcontract for laying the vestibule floors for the defendant testified as a witness for the defendant. He testified that he personally supervised the work of laying these floors, which he said were completed the latter part of 1939 or the first part of 1940; that the pitch was normal, though at the corner where the pitch was the greatest, on account of the drop in the sidewalk, it might be a little steep; that there was between 30% and 40% of abrasive in the terrazzo in those floors; and that this was according to the standard of good construction.

He also testified that after such a floor had been laid, had hardened, and had been made even with rubbing machines, as these floors had been, it would be impossible to tell how much abrasive was in it by looking at the surface and picking at it with a knife. On cross-examination he testified: "Well, if any percentage of material is put in, no matter where it shows, meets the specifications. . . . Mix it up and take a big

handful, where is it? We can't tell where it is going to go to or how it is going to spread around."

He stated that where the alundum is needed "is up near the surface"; but he added, in answering the next two questions: "There is nothing in the specifications to show where that 40 per cent should go." and "We put it in the mixture and let it go where it will." Later, however, he stated, referring to the alundum: "So those particles have to go where they will, and we try our best to get as much as we can on the surface. That's why we sow it on top of the surface after that mixture is put in." Uncontradicted evidence was introduced for the defendant that no change was made in these vestibules between the time when they were constructed and the time of the plaintiff's accident.

The testimony for the defendant seems to have been introduced on the mistaken view that the plaintiff's case was based on negligence by the defendant in having the floor improperly constructed.

The plaintiff's fifth exception was to the sustaining by the trial justice of the defendant's objection to a question by the plaintiff's attorney to his expert witness after the latter had testified, in substance, that a terrazzo floor with as little abrasive in its surface as he had found in the surface of this floor would be quite slippery and more so when wet. The question objected to was as follows: "Lacking the abrasive as it stands, is there anything that can be done to correct that situation, Mr. Cull?"

It seems clear to us that it would have been a pertinent answer to that question for the witness to have testified that in his opinion the danger which persons walking on that floor in wet weather would incur because of its extra slipperiness when wet could be avoided by then putting on it a mat or mats of rubber or by providing some other means of minimizing its slipperiness. The question was fully pertinent to the issue which was presented by the allegation, in the declaration, of the duty on the part of the defendant to use due care, and which will be next discussed under the plaintiff's

eighth exception. Therefore, in our opinion, this fifth exception should be sustained.

The plaintiff's eighth exception was to the direction to the jury to return a verdict for the defendant. That direction was clearly based on the ground that there was no evidence to support a finding that the defendant was guilty of negligence because of the manner in which the floors of the vestibules were constructed. This is also the only ground upon which the defendant, in its brief, bases its contention that the verdict was properly directed.

If the plaintiff's case were based upon such negligence by the defendant, we are strongly inclined to the opinion that there would be merit in this contention of the defendant, because there was no evidence in support of a finding that the defendant, if it had used due care, would have known that these floors were not being properly constructed and would have had them properly constructed. But the plaintiff's case was not based on any charge of such negligence, although the trial justice, in the language which he used, as set forth in the transcript, in sustaining the motion of the defendant for the direction of a verdict in its favor, clearly treated the declaration as based *solely* on such alleged negligence.

On the contrary, the plaintiff's declaration contained only one count and therein it was alleged, in substance, that by reason of the manner of the construction of the floor and by reason of the slope of it from east to west and from north to south, the use of this vestibule was extremely dangerous *when it was wet*, as the defendant well knew, or would have known, if it had exercised ordinary care; and that therefore it was its duty, whenever such condition existed, as it did at the time when the plaintiff was injured, to use ordinary care to protect persons lawfully using this vestibule from the danger incidental to such condition, "by means of temporary floor mats or covers or by the use, over the wet surface of the said entrance, of such materials as would reasonably afford protection from the said dangers and hazards."

Also, the sole allegation of negligence on the part of the defendant was that, in violation of such duty under the existing condition of wetness and the resulting slipperiness, it negligently failed *to provide such protection* in the manner above described or in any other manner; and the plaintiff alleged, in substance, that in consequence of *this failure* by the defendant, and while she was in the exercise of due care for her safety, she had slipped on the floor of this vestibule and fallen and been injured.

In determining the issue raised by the plaintiff's eighth exception, we must apply the well-settled rules that a verdict should not be directed for a defendant if, on any reasonable view of the evidence, the plaintiff is entitled to recover; that the trial justice is not concerned with determining the weight of the evidence, nor with passing upon the credibility of the witnesses; and that all reasonable inferences in favor of the plaintiff must be drawn. *Andrews* v. *Penna Charcoal Co.,* 55 R. I. 215, 219; *Duffy* v. *United Electric Rys. Co.,* 56 R. I. 450, 452.

It seems clear to us, from an examination of the transcript of the testimony at the trial, that a conclusion by the jury that the plaintiff, while in the exercise of reasonable care for her safety, slipped and fell because the floor of the vestibule was then very wet and slippery and had no rubber mat or other safeguard on it would have been in accordance with a reasonable view of the testimony and reasonable inferences therefrom in her favor.

This leaves for our consideration the question whether a conclusion by the jury that the defendant was negligent because it did not then have on that floor such mat or other safeguard would have been in accordance with a reasonable view of the testimony and reasonable inferences therefrom.

In deciding that question we should take into consideration that there was testimony from the plaintiff's expert witness that the less of abrasive material there was in the surface of a terrazzo floor the more slippery the floor would be; that with no abrasive material there the floor would be

very smooth, hard and slippery; that his examination had convinced him that there was very little abrasive material in the surface of this floor; and that water on the surface of such a floor would make it more slippery. There was also testimony by him as to the floor sloping in two directions.

But at the conclusion of the testimony for both parties the trial justice, in deciding the defendant's motion for the direction of a verdict in its favor, stated that there was positive, not opinion, testimony for the defendant that the floor contained not less than 30% of the abrasive material; and he added: "So that the opinion testimony of the plaintiff's expert, which had apparent value up to the time when the motion for nonsuit was denied, was completely destroyed and nullified by the positive testimony of Mr. Mahoney, and the corroborative testimony, the testimony offered by the defendant, corroborative of the testimony of John E. Mahoney." On this ground alone he directed the verdict for the defendant.

In the defendant's brief and argument before us in support of this directed verdict, it relies upon the same ground, saying in its brief: "Where positive and unimpeached evidence of fact is opposed only by opinion no question for the jury arises." In support of this statement it cites a considerable number of cases from other states and quotes from the opinions in some of them. But it cites no case from this state.

The plaintiff in her brief cites three opinions of this court in which a contrary rule was stated. *Ashton* v. *Tax Assessors of the Town of Jamestown,* 60 R. I. 388; *Levy* v. *Zura,* 60 R. I. 399; *James* v. *Rhode Island Auditorium,* 60 R. I. 405, at 414. The question arose differently in those cases, in which the effect of expert opinion testimony, when opposed by ordinary factual testimony, was not directly involved.

In the first of these cases this court, at page 396, says: "The great weight of authority is that, with certain rare exceptions which need not concern us now, expert testimony is to be examined and considered by the triers of facts, whether

court or jury, like that of any other witness, together with all the other evidence in the case." In the second of these cases this court, at page 401, says: "The evidence of such expert witnesses is to be taken in conjunction with all the other evidence in the case. It should be carefully weighed by a trial justice, who is not entitled either to disregard it or to treat it as binding upon him irrespective of other evidence and the reasonable inferences therefrom."

We have found nothing in the opinions of this court which supports the rule relied upon by the trial justice in the instant case. In our judgment the correct rule is as stated in Lawson, Expert and Opinion Evidence (2d ed.) 282, Rule 44, as follows: "The testimony of experts is entitled to the same credit, is to be tested by the same rules as are applied to the evidence of other witnesses, and should have weight with the jury according to their opportunities and qualifications. But it is not conclusive." Substantially the same rule is supported by an exhaustive discussion of the question in 7 Wigmore, Evidence (3d ed.) ch. LXVII, § § 1917-1922.

Moreover, the defendant's witnesses did not directly testify as to the percentage of alundum *at the surface* of the floors, while the testimony of the plaintiff's expert was addressed to that surface, was based on his personal examination of it and on his testing of that surface with his feet, presumably by thus finding out how slippery it was. He also testified that it would be more slippery when wet. His testimony pertinent to the vital issue in this case was largely factual and not opinion.

For the above reasons we are of the opinion that the trial justice, in ruling on the defendant's motion for the direction of a verdict in its favor, was not justified in giving no effect to the testimony of the plaintiff's expert witness. It was clearly pertinent on issues in the case; and the weight to be given to it was not a matter to be considered by the trial justice in ruling on this motion.

Therefore and because of facts above stated and shown by testimony, we are of the opinion that there was evidence,

and reasonable inferences therefrom favorable to the plaintiff, which raised questions for the jury to determine whether there was very little abrasive material at the surface of the vestibule floor on which the plaintiff slipped and fell; whether because of this fact and the double slope in that floor it would, if no extra protection was then provided, be dangerously slippery on business days in wet, snowy, or slushy weather, on account of the water that would be upon it; and also whether the defendant was negligent in not having, at the time of the accident, a rubber mat or other effective protection on this floor at the place where the plaintiff slipped and fell. This being so, upon the evidence thus considered, the plaintiff's eighth exception to the direction by the trial justice of a verdict for the defendant should be sustained.

We see no reason for discussing any of the plaintiff's other exceptions.

The plaintiff's fifth and eighth exceptions are sustained and the case is remitted to the superior court for a new trial.

*William M. Mackenzie,* for plaintiff.

*Frederick W. O'Connell, Swan, Keeney & Smith,* for defendant.