ERICKSON v. WALGREEN DRUG CO., et al.

No. 7444.   Decided June 1, 1951.   (232 P. 2d 210.)

See 65 C. J. S., Negligence, sec. 228. Store proprietors, injury to customer as creating liability on. 38 Am. Jur., Negligence, secs. 31 et seq.; 162 A. L. R. 949.

*Moreton, Christensen & Christensen,* Salt Lake City, for appellants.

*Rawlings, Wallace, Black, Roberts & Black,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

Action by the respondent against the Walgreen Drug Company and the Salisbury Investment Company to recover damages for personal injuries sustained by her when she slipped and fell on the terrazzo floor of an entranceway in a building constructed and owned by the Investment Company and leased, in part, by it to the Drug Company. In the court below a jury returned a verdict of $8,000 against the Drug Company but found no cause of action against the Investment Company. The Drug Company, hereinafter referred to as the appellant, prosecutes this appeal, relying principally upon the contention that there is no evidence to sustain a finding of negligence on its part.

The appellant operates a drug store on the southeast corner of Main and Second South Streets in downtown Salt Lake City, Utah. The entranceway to the store in which

the respondent fell is at the northwest corner of the building and consists of a revolving door in the center with an ordinary swinging door on each side thereof. The doors are recessed from the sidewalk and between them and the sidewalk is a terrazzo slab, sloping slightly toward the street and away from the building in a fan shape and joining the sidewalk approximately eight to nine feet from the doors. A canopy covers the entranceway.

At the time of the accident it was raining and the streets were wet. As the respondent approached the appellant's store with the intention of entering therein for the purpose of making a purchase, she noticed several people standing under the shelter of the canopy. After stepping from the cement sidewalk onto the terrazzo floor of the entranceway and walking four or five steps at an ordinary gait, she reached out to open the right-hand swinging door when her right foot slipped on the terrazzo surface and she fell, sustaining a fracture of the femur of her right leg. The terrazzo surface was wet, apparently from water tracked in from the street by persons entering the store. The respondent testified that she noticed that the floor of the entranceway was wet before she fell. She was wearing shoes with Cuban leather heels approximately one and one-half inches high.

In her complaint the respondent alleged (1) that the Investment Company was negligent in the manner in which it constructed and maintained the terrazzo floor in that it became very slippery when wet, and (2) that the appellant knew or should have known of the propensities of the floor to become slippery when wet and was negligent in failing to warn customers using the entranceway of the hazard involved or to obviate the slippery condition by covering the floor with mats or by the use of other means. Under the lease between the Investment Company and the appellant, the former, as lessor, was obligated to make all exterior and structural repairs to the building, including repairs to the sidewalk and entrances to the building.

As heretofore stated the appellant's principal contention upon this appeal is that there is no competent evidence in the record to sustain a finding of negligence on its part in the particulars alleged by the respondent set out above. After a careful examination of the record we are convinced that this contention must fail. It thus becomes necessary to briefly summarize the evidence.

One Raymond J. Ashton, the associate architect of the building, testified that the specifications for the building required carborundum to be spread in the finishing coat in the terrazzo floor to form a grit to give secure footing and make the use of mats unnecessary; that he recently examined the terrazzo slab and found the carborundum grit present; that the plans called for a slope of 1/16th of an inch to the foot in the floor of the entranceway; that the floor sloped in two directions but the slope was almost impreceptible and unusually flat for an entranceway; and that in his opinion the type of construction employed in the entranceway in question was the safest type that his profession had been able to employ.

A university professor, with a doctor's degree in physical chemistry, and engaged at the time of the trial in a surface chemistry project sponsored by the Navy, one George R. Hill, testified that he had performed certain experiments on the terrazzo floor in question and also on the city sidewalk adjoining it and that they revealed that both the terrazzo and the sidewalk had the same co-efficient of friction; that water on a surface acts as a lubricant so that if a foot started to slide it would continue to slide more easily than were the surface dry; that although there were quite a number of irregularities in the surface of the terrazzo slab which were apparent to the touch, and although it was "fairly worn," the carborundum had not worn off; that in his opinion the floor was a safe surface to walk upon; and that in the last few years terrazzo had been used more extensively in entranceways than either marble, tile, cement or asphalt.

One Frank Caffall, a tile and terrazzo contractor, testifying on behalf of the plaintiff, stated that he had examined the terrazzo slab in question but because it was constructed of black marble and green cement, it was difficult to tell whether there was any non-slip aggregate in it, although when he slid his foot over the surface it felt as though there were none; that the surface of the terrazzo had been ground smooth and was "quite slippery" when wet; that even though terrazzo is constructed with non-skid abrasive, through constant wear the abrasive comes less effective; and that in his opinion a terrazzo surface when wet is more slippery than the wet surface of other materials commonly used in store entranceways because terrazzo is ground smoother.

There was also testimony adduced that about half of the entranceways to the stores and business houses along Main Street from South Temple Street to Fourth South Street in Salt Lake City, a distance of four blocks, were constructed of terrazzo; that most of these entranceways were uninclosed like the appellant's, but that a few had storm doors; that some of the storekeepers placed mats in their entranceways when it stormed and that the appellant had, at times, placed mats over the center of the terrazzo slab leading directly into the revolving door. However, there was no evidence that mats had been used for protecting the sections of the entranceway leading to the swinging doors on each side of the revolving door.

The duty owed to the respondent by the appellant is stated in Section 343 of the American Law Institute's Restatement of the Law of Torts as follows:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover the condition which, if known to him, he should realize as involving an unreasonable risk to them, and,

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm  *  *  *"

From all of the evidence, we think a jury could reasonably conclude that the appellant knew or should have known of the propensities of its terrazzo entranceway to become slippery when wet and should have realized that because of those propensities it created an unreasonable risk to business visitors who would not discover the slippery condition and realize the risk involved therein. It is true that the respondent had crossed the terrazzo slab many times prior to the accident; that on this particular occasion she knew the terrazzo floor was wet and as a reasonable person should have realized the increased possibility of her slipping. Yet according to Mr. Caffall, the terrazzo slab was "quite slippery" when wet and felt as though it did not contain any abrasive; that the slab was smooth and being constructed of terrazzo was more slippery when wet than the wet surface of other materials commonly used in entranceways. Mr. Hill agreed that the slab had sustained considerable wear. As to these matters, we cannot, as a matter of law, charge the respondent with knowing. While the floor appears to have been initially constructed so as to be reasonably safe for travel, a jury could conclude that the surface had, from continual wear, worn smooth and the abrasive become less effective to secure footing.

While there is no evidence of any incident occurring which would have put the appellant on notice that the terrazzo was slippery when wet, such evidence is not necessary to establish liability on the part of the appellant. The latter was in the actual possession of the building and had

a duty to search out defects in the premises in order that they be reasonably safe for the presence of business visitors.

This is not the case of a business visitor slipping on some foreign substance such· as oil, which had carelessly been spilled on the floor only a short time prior to the accident. In such cases it is often held as a matter of law that the storekeeper had no knowledge nor could he be charged with knowledge of the presence of the foreign substance which caused the fall. But in the instant case the jury could find that through constant wear the terrazzo slab had over a period of time become smooth, resulting in it being very slippery when wet. Although there was evidence that no one else had complained of falling on the terrazzo, slab, it may have been so slippery when wet that the appellant should have known of that condition and realized that it subjected business visitors to an unreasonable risk. It is true that the terrazzo slab became wet from water tracked in from the street by persons entering the store, and that the appellant had no control over this element and probably with no amount of effort could have kept the surface dry. But the terrazzo surface was not so large that it was impracticable to cover it with a mat to secure footing, or to post a sign advising business visitors of the hazard.

The appellant urges that the verdict rendered by the jury is inconsistent and contrary to the instructions in that the jury found in effect that the Investment Company was not negligent in its construction or maintenance of the terrazzo entranceway, but nevertheless found that the appellant was negligent in failing to give warning of a slippery condition or in not taking steps to obviate the condition. As a prerequisite to a finding that it was negligent, the appellant argues that it was necessary for the jury to find that the Investment Company was negligent.

As to the duty upon the Investment Company the court charged the jury that:

"* * * the Salisbury Investment Company constructed the entranceway to the [appellant's] store where [respondent] fell and had

the exclusive right to change the entranceway and material from which said entranceway was constructed; and if you find from a preponderance of the evidence that said entranceway was not constructed or maintained in a reasonably safe manner in that when wet the entranceway became slick, slippery, and not reasonably safe to walk upon, and that the Salisbury Investment Company knew or in the exercise of reasonable care should have known of said condition, then the Salisbury Investment Company was negligent; * * *"

With respect to the duty upon the appellant, the jury was instructed that:

"* * * it was the duty of [the appellant] to exercise reasonable care to keep the entranceway to its store reasonably safe for the use of its customers; and in this regard you are instructed that if you shall find from a preponderance of the evidence that the entranceway was not reasonably safe in that the floor of the entranceway had become wet from rain water and slick and slippery and that [the appellant] knew or in the exercise of reasonable care should have known of said condition, and failed to exercise reasonable care to remedy said condition and make said entranceway reasonably safe for the use of its customers, by means of warning signs to advise of the slick condition or by covering the terrazzo entrance with rubber mats or other substances to prevent slipping, then [the appellant] was negligent; * * *"

Clearly, the verdict exonerating the builder from negligence and finding the lessee culpable is not inherently inconsistent nor contrary to the instructions. The jury may have concluded that the entranceway was neither negligently constructed nor maintained by the Investment Company, but that due care dictated that when the entranceway became wet the appellant employ means to eliminate the slippery condition existing or give warning thereof. Another possibility is that the jury may have concluded (1) that the terrazzo floor while constructed in a safe manner, through continuous wear had worn smooth, thereby creating an unreasonable risk to business visitors using the entranceway when it became wet, but (2) that the Investment Company had no knowledge of the slippery condition nor could it be charged with such knowledge; (3) that the appellant being in the actual

possession of the premises, either knew or should have known of the slippery condition of the terrazzo when wet, realized that it constituted an unreasonable risk to business visitors, and should have either given them warning thereof or taken steps to obviate the condition.

In regard to this latter possible basis for the jury's verdict, the case of *Cardall* v. *Shartenburg's Inc.*, 69 R. I. 97, 31 A. 12, is enlightening. There the plaintiff brought an action to recover damages for injuries sustained by her when she slipped and fell on the wet terrazzo floor of a vestibule in the defendant's store. The trial court, treating the plaintiff's complaint as alleging solely that the defendant was negligent in its construction of the floor, directed a verdict in favor of the defendant because the evidence revealed that the floor had been constructed according to established standards. Upon appeal, the Supreme Court of Rhode Island explained that were the plaintiff's case based solely upon negligent construction, the direction of a verdict in favor of the defendant would doubtedlessly be correct because there was no evidence that if the defendant had employed due care, it would have known that the floor was not being properly constructed, and would have had it properly constructed. But, stated the court, the plaintiff did not allege improper construction of the floor, but that "by reason of the manner of the construction of the floor and by reason of the slope of it," the use of the vestibule was extremely dangerous when wet as the defendant well knew or should have known, and that due care dictated that it employ means to insure the safety of persons using the vestibule. The court declared that there was evidence from which a jury could have found negligence on the part of the defendant in the particular alleged by the plaintiff and consequently reversed the case for a new trial.

One further assignment of error is made by the appellant. The trial court refused to allow in evidence testimony

that approximately 4,000 to 5,000 persons entered the appellant's store every day but that during the fifteen year period prior to the respondent's fall, the management had never received a single complaint or report about anyone slipping on the terrazzo slab. In excluding this testimony, we conclude that the lower court erred.

Evidence of the absence of accidents occurring prior to the accident complained of may not be admissible to establish that an unsafe condition did not exist at the time of the accident in question. That matter we need not decide here. But such evidence is clearly admissible to prove that a possessor of land had no knowledge nor could he be charged with knowledge that an unsafe condition existed, particluarly when the unsafe condition complained of is latent. In the instant case the appellant can only be liable if the terrazzo floor when wet subjected business visitors to an unreasonable risk and the appellant either knew or by the exercise of reasonable care could have discovered that such a condition existed. Evidence that thousands of business visitors had walked through the entranceway in all kinds of weather and that none of them had ever complained to the appellant of slipping on the terrazzo slab, while not conclusive on the question, as heretofore pointed out, does have probative value upon the question whether the appellant knew or should have known of the existence of an unreasonable risk to customers entering and leaving the store.

In *Sistrunk* v. *Audubon Park Natatorium*, La. App., 164 So. 667, an action was brought against an amusement company for injuries sustained by a boy who fell from a slide at a swimming pool. Evidence that hundreds of other persons used the slide without injury was held admissible for the purpose of showing that the operators of the slide were not negligent in failing to anticipate and guard against such an accident. Similarly, in *Campion* v. *Chicago Landscape Co.*, 295 Ill. App. 225, 14 N. E. 2d 879, in an action for injuries to a golf player struck in the eye by a ball

claimed to have been due to the manner in which the golf course was laid out, evidence that there had been no other accidents was admissible for the purpose of showing lack of knowledge of the danger on the part of the defendant. See the cases cited on this question at 128 A. L. R. 606.

To sustain her contention that such testimony was properly rejected by the trial court, the respondent relies on the case of *Barlow* v. *Salt Lake & Utah Railway Company,* 57 Utah 312, 194 P. 665. In that case the plaintiff was injured on March 14, 1918. The proffered testimony was that no passenger was injured in alighting from cars after that date. The rejection of that testimony presents a different principle than the ruling under consideration in this case. Evidence of the non-occurrence of accidents subsequent to the accident complained of is not material as it does not tend to establish lack of knowledge on the part of a defendant at the time of the accident in question.

In order to make the questioned evidence admissible, it was not necessary that the appellant establish similarity of conditions. The proffered testimony covered a period of fifteen years and this was of sufficient duration to include days when the weather was stormy as well as when the weather was clear. On some days conditions might be worse than those encountered by the respondent and on other days conditions might be more favorable.

It is true that there is evidence that on some previous occasions when it was storming, a rubber mat had been placed out by the appellant over the terrazzo slab. However, the mat was placed in front of the revolving door only and did not cover the entire surface of the entranceway. Particularly, it did not cover the portion of the entranceway in front of the doors on either side of the revolving door. This portion of the entranceway is traversed by the public as well as the portion in front of the revolving door, and it was here that the respondent fell.

The judgment below is reversed and the case is remanded for a new trial. Costs awarded to the appellant.

WADE and McDONOUGH, JJ., concur.

CROCKETT, J., not participating.

LATIMER, Justice (concurring in part and dissenting in part).

Plaintiff commenced this action against the defendants Walgreen Drug Company and Salisbury Investment Company to recover damages for certain personal injuries sustained by her when she slipped and fell in the entrance-way of a building owned and constructed by the investment company and leased to the drug company. The cause was tried in the court below and a verdict rendered by the jury in favor of the plaintiff against the drug company and in favor of the investment company against the plaintiff. The drug company appeals and relies principally upon the contention that there is no evidence to sustain the finding that it was negligent.

The facts stated most favorably to respondent are substantially these: The defendant Salisbury Investment Company constructed a building on the southeast corner of Second South and Main Streets in Salt Lake City, Utah. Part of this building was leased to the defendant Walgreen Drug Company. The lease provided that the landlord should make all exterior repairs not caused by the fault of the tenant and should repair the sidewalks and entrances to the leased portion of the premises. The building was so constructed that one of the entrances to the drug store faced Main and Second South Streets in a north-westerly direction. This entrance consisted of three doors, a revolving door in the center with an ordinary swinging door on each side. The entrance was recessed so as to be set back from the front show windows and there was a horizontal canopy which covered the recessed portion. The approach to the doorways was constructed of a material

known as terrazzo and it was laid so that it sloped slightly away from the building in a fan shape and joined the sidewalk approximately eight to nine feet from the revolving door. The amount of slope away from the door through which plaintiff intended to pass was one-eighth of an inch to the foot.

On September 25, 1948, plaintiff left her home at approximately 2:30 p. m. at which time it was beginning to rain. She arrived at Second South and Main Streets at approximately 3:00 p. m. The streets were wet and it was still raining. As plaintiff approached defendant's store she noted there were several people standing under the shelter of the canopy. She stepped from the cement walk onto the terrazzo floor of the entranceway, walked four or five steps at an ordinary gait, and as she reached out to open the south swinging door her right foot slipped on the surface of the terrazzo and she fell causing her severe injuries. The terrazzo was wet from the rain, and was smooth and slick. Plaintiff was wearing shoes with "Cuban" leather heels, approximately one and one-half inches high.

At the time the building was constructed the specifications for terrazzo required that an abrasive be mixed with the other materials used to make the finished product and the specifications appear to have been complied with. The terrazzo in place at the time of the accident was examined by a tile contractor and, according to him, it was difficult to tell whether there was non-skid material near the surface, but the associate architect testified that the abrasive material was present. The contractor further explained that the surface felt very smooth and the abrasive qualities originally placed in the article could have been worn smooth by wear. The terrazzo portion of the entranceway sloped slightly away from the building, but this was so slight that all witnesses indicated it was practically horizontal. The terrazzo was more slippery when wet than when dry and at times during inclement weather the defendant had placed mats over the entranceway leading directly into the re-

volving door. However, there was no evidence that mats had been used for protecting the sections of the entrance leading to the side doors.

There was evidence as to the co-efficient of friction of terrazzo, its use by building contractors, its abrasive qualities as compared to other materials similarly used and the effect of water in its surfaces. This evidence is not detailed for the reason that its principal relevancy was to establish the proper construction of the building and this issue was resolved in favor of the investment company. However, some of the evidence will be referred to later as it bears on the assertion that the defendant Walgreen Drug Company should have had knowledge that its entranceway when wet was dangerous and unsafe for invitees entering and leaving the store.

The trial judge in his charge permitted the jury to consider one ground of negligence against the investment company, namely, improper construction of the entranceway; and two grounds of negligence against the drug company, namely, failure to warn and failure to cover the terrazzo with a protective covering such as a mat. The verdict of the jury eliminated the question of improper construction and so I deal only with the questions as to whether or not the defendant drug company was negligent in failing to warn plaintiff that the surface of the terrazzo was slippery when wet and whether or not reasonable care required the drug company to place a mat on the approach to the doors.

I am of the opinion that the defendant drug company was not negligent in failing to warn plaintiff of a dangerous condition. She was familiar with the entrance to the store and had crossed over it many times, both in good weather and bad. She knew that moisture on the surface of the sidewalk and the entrance rendered both more slippery and knew she was walking over a slick surface. A warning sign could not have given her more information than she

already possessed. The record does not indicate that there was a latent defect or a hidden danger or that defendant drug company had knowledge that because of wear and tear the surface of the terrazzo was worn so smooth as to be dangerous. On the contrary, it would appear that the company could have reasonably believed that the entrance-way was constructed in the safest possible manner and that there were no hazards present other than those ordinarily encountered on a rainy day. Both plaintiff and defendant are charged with knowledge that cement, marble or composition surfaces become slippery when covered with water and both know that moisture on the surface of the entrance-way increase the hazards to persons walking on the passage-way. Had the drug company known, or if it could be charged with knowledge, that an inferior product had been used, that the materials used subjected customers to extraordinary risks, or that wear and tear on the surface of the terrazzo had worn away the abrasive substance and so slickened the surface that an unsafe condition existed, then a warning might have been called for. But in this instance the record shows a standard product and proper construction. A tile contractor who made an examination of the surface of the terrazzo at the request of the plaintiff was unable to determine whether abrasive material was present on the surface. He did not testify that abrasive qualities were missing and other witnesses claimed that the carborundum was evident. If, upon a close inspection, it could not be determined that the abrasive characteristics had worn away, there is no reason to suspect the drug company would have known that the terrazzo had become unfit for use. The record is barren of any evidence or of any incident which might have charged the drug company with notice that the abrasive qualities of the terrazzo were sub-standard. Moreover, there was no affirmative act on the part of the company which contributed to the fall. No foreign substance was on the floor and no act of either defendant caused the terrazzo to be slippery. In the final analysis, the accident was caused by a combination of ele-

ments and circumstances which do not affix liability to the defendant drug company. There are some accidents which no amount of care can prevent, as individuals will always slip on slick surfaces, and slippery surfaces will always be present during inclement weather.

The question of whether the drug company was negligent in not placing mats over the entranceway presents a more difficult problem. There was evidence that some business houses in Salt Lake City who have entrances constructed of a like material use mats during inclement weather. Likewise, there is evidence that the drug company has on certain occasions used a mat for covering the center of the entrance leading to the revolving door.

Cases with similar facts have been passed on by different courts and different conclusions reached. I refer to and quote from two which present the arguments for and against the proposition that there is a duty on the part of a store owner to cover slippery surfaces with protective mats.

In the case of *Cardall* v. *Shartenberg's Inc.,* 69 R. I. 97, 31 A. 2d 12, 17, the Supreme Court of Rhode Island passed on the question. The accident happened under the following circumstances: The plaintiff slipped and fell on February 19, 1940, as she was leaving defendant's department store by way of one of two vestibules. The vestibules were open and paved with terrazzo which had been in place for less than one year. The slope of the vestibule amounted to 3½ to 4 inches in 10½ feet in the direction of travel and a slight slope sideways. ' Plaintiff had been in the store many times and was familiar with the fact that the floor of the vestibule was sloping. On the day of the accident the temperature was just above freezing point and at the time plaintiff walked across the vestibule it was wet and slippery. There was testimony concerning the percentage of abrasive material in the terrazzo, one witness claiming

it was as little as 4 or 5 per cent while other witnesses claimed it reached 30 to 40 per cent.

The trial judge directed a verdict against the plaintiff upon the grounds that the evidence showed the floor of the vestibule was properly constructed according to established practice. The Supreme Court of Rhode Island reversed upon several grounds, but the one casting light on this decision deals with the sufficiency of the evidence to justify submitting the issue of negligence to the jury. Mr. Justice Moss, speaking for the Supreme Court, stated:

"Therefore and because of facts above stated and shown by testimony, we are of the opinion that there was evidence, and reasonable inferences therefrom favorable to the plaintiff, which raised questions for the jury to determine whether there was very little abrasive material at the surface of the vestibule floor on which the plaintiff slipped and fell; whether because of this fact and the double slope in that floor it would, if no extra protection was then provided, be dangerously slippery on business days in wet, snowy, or slushy weather, on account of the water that would be upon it; and also whether the defendant was negligent in not having, at the time of the accident, a rubber mat or other effective protection on this floor at the place where the plaintiff slipped and fell. This being so, upon the evidence thus considered, the plaintiff's eighth exception to the direction by the trial justice of a verdict for the defendant should be sustained."

The Supreme Court of Missouri, in the case of *Fletcher* v. *North Mehornay Furniture Co.*, 359 Mo. 607, 222 S. W. 2d 789, 794, reached an opposite conclusion on a similar set of facts. In that case plaintiff slipped as she was walking in front of defendant's store. The sidewalk in front of that institution was constructed of terrazzo which plaintiff alleged was slanted, highly polished and slippery. Plaintiff fell at approximately 9 o'clock a. m., November 25, 1946, at a time when the weather was cold and the sidewalk and streets were wet. Some snow had fallen, but at the time of the accident it had melted, leaving the surface of the terrazzo wet and slippery. Plaintiff was wearing Cuban heels of about two inches in height. The usual testimony concerning the presence or lack of presence of abrasive materials

was produced and the witnesses, as in this case, testified to the fact that moisture acts as a lubricant when present on terrazzo and renders the same slippery and hazardous. The percentage of slope in that case was 2½ inches in 9 feet or 5/18th of an inch to the foot. The opinion of a Commission was adopted by the Supreme Court, and it included the following statement of the law as referred to in other Missouri cases:

"In *Schmoll* v. *National Shirt Shops*, 354 Mo. 1164, 193 S. W. 2d 605, the plaintiff fell on the terrazzo entrance to the defendant's store and was injured. In that case the terrazzo was wet and slick as in the present case; embedded in the terrazzo in that case were brass letters and these were wet and slick. It was held that the plaintiff could not recover. In ruling the case the court said, 193 S. W. 2d, loc. cit. 607: 'The evidence shows terrazzo is commonly used as a flooring in lobbies of stores, and the use of brass in providing expansion joints is likewise common in the construction of terrazzo flooring; it has not been considered that terrazzo (with brass expansion joints) as a flooring is inherently dangerous; and defendant is not to be held negligent merely because of the use of terrazzo with brass expansion joints in the construction of the lobby floor. *Cameron* v. *Small*, supra, Mo. Sup., 182 S. W. 2d 565. It is also seen from the evidence that the use of brass in embedded designs or lettering indicating a trade name or mark, or a name of a store is not uncommon in the terrazzo floors of entrance lobbies of stores; however, brass becomes smooth and highly polished by wear, and, when so, is slippery when wet. Yet, defendant may not be necessarily subjected to liability because the brass so used was slippery and though the plaintiff's fall was occasioned by the dangerously slippery condition of the brass. There is no liability of defendant for injuries from dangers that are obvious, or as well known to plaintiff as to defendant.' "

It might be that the case at bar could be distinguished from the Rhode Island case because of the difference in the slope of the entranceway or the time of the year. The defendants in this case were not faced with the possibility of danger from an icy or sharply inclined entranceway. If the cases are undistinguishable, then I prefer to follow the principles suggested by the Missouri Court.

There is evidence that on some occasions the company had used mats on the center portion of the approach which led to the revolving door. If mats were located as suggested by the witnesses they would not have covered the portion traversed by plaintiff. However, it might be reasonably argued that had they been in place plaintiff might have chosen the revolving door entrance. Granting this possibility, and accepting the evidence that in some entrances constructed of terrazzo other merchants have used mats during adverse weather, I am of the opinion that the failure to use mats in this instance cannot be considered as lack of due care.

There are cases where the failure to use a mat might be considered negligence. If an approach sloped excessively, if materials were used which a store owner knew did not contain any non-skid substance, if numerous people had slipped so that the storekeeper could be charged with knowledge that the material used was not appropriate for the purpose intended and therefore dangerous, or if other unusual situations were present which made the passage-way dangerous when it was not covered, then there might be a jury question as to the storekeeper's liability.

None of the assumed conditions are present in this case. Accordingly, if the drug company can be held liable for failure to use a mat then every storekeeper or city can be charged with the duty of covering the entranceways and sidewalks or suffer the possibility of being charged with lack of due care towards persons walking thereon. It must be remembered that the area here involved was not inside the store where the storekeeper might have prevented the floor from becoming slippery and would only have a limited space to cover, but the fall was on the outside of the store where protection from the elements was impracticable and where the limitation on the size of the area would be the width and length of the sidewalk abutting the store.

Because respondent claims to have observed mats being used at some other time does not brand appellant with not

having used due care. It might be that at other times the reasons for placing the mats was to protect patrons from slipping on ice or snow which might have blanketed the terrazzo. Dates were not fixed by the witnesses as to when the mats were used. Aside from that, to establish such a rule of law would have the effect of penalizing a storekeeper for exercising more than due care. Knowing that moisture, snow or ice have a tendency to make a surface slippery, some merchants take extra precaution for the safety or convenience of their patrons by using mats. Failure to maintain those extra precautions at all times is not negligence and the duty of a storekeeper is not measured by his taking or failing to take every conceivable precaution to prevent injuries to his invitees. The most that he can be charged with is to use reasonable care to avoid their injury and this record establishes that the drug company met every reasonable standard imposed on a storekeeper.