MRS. EDYTHE P. STEPHENS, Plaintiff-in-Error,
v. MARY ELIZABETH MURPHREE, Defendant-in-
Error. —433 S.W.(2d) 673.

Middle Section. · March 29, 1968.

Certiorari Denied by Supreme Court August 19, 1968.

Stephenson, Lackey & Holman, Nashville, for plaintiff in error.

McCarley & Hollins, Nashville, for defendant in error.

## I

## THE CASE

SHRIVER, P. J. The parties will be referred to as plaintiff and defendant as they appeared in the Court below.

Plaintiff, Edythe P. Stephens, sued the defendant, Mary Elizabeth Murphree, for personal injuries received when plaintiff slipped and fell on a walkway leading from the street to the apartment rented by plaintiff from the defendant owner.

The case was tried in the Fifth Circuit Court of Davidson County with a jury, and, at the conclusion of all the proof, the Trial Judge directed a verdict in favor of the defendant. After the motion for a new trial was overruled the cause was appealed in error here.

## II

## THE FACTS

There is no substantial dispute as to the facts in this case.

The defendant was the owner of a duplex apartment house at 701 Crescent Road, in Nashville, in which the two apartments were rented to different tenants. It was charged in the declaration and admitted in a special plea that the walkways serving the premises remained in the possession and control of the defendant for the common use of the tenants, and that the defendant, therefore, had the continuing duty to exercise reasonable care to keep the premises safe for the tenants.

Plaintiff moved into the apartment on the evening of January 21, 1966, and the accident happened on the following day, to wit: January 22, 1966.

Plaintiff, Mrs. Stephens, testified that she is a woman 57 years old, and, prior to the accident in question, was in good health. She is a licensed practical nurse and an office employee of a local doctor.

The walkway leading from the street to the house occupied by plaintiff slopes downward toward the house and is constructed of various sized and colored slabs of marble set in concrete. On the night of January 21st, after plaintiff had moved in that afternoon, it snowed, begin-

ning about 10:25 P.M. and continued to snow during a good portion of the next day.

On the morning of Saturday, January 22nd, plaintiff walked through the snow on the walkway in question proceeding to her car which was parked in the street and drove to work. When she left work about noon she went to a grocery store where she purchased some milk, bread, etc. and then drove home. She was dressed in a nurse's uniform, had on nurse's shoes and a new pair of rubber galoshes. The right galosh was made an exhibit to her testimony, the left one having been cut off her foot after she fell and was hurt. The snow was several inches deep according to her testimony, which is substantiated by the testimony of other witnesses. As she proceeded down the walkway from the street to the house she experienced no difficulty in walking through the snow in the usual manner until, suddenly, her left foot slipped and she fell breaking her ankle and suffering painful and rather serious injuries.

She testified that the snow came off the walk with her foot, exposing the surface of the walk at the spot where she had fallen, and she discovered that her foot had slipped on a green slab of the marble in the walkway. She called for help and remained down on the walk until Mr. Albert Bowen came to her aid and called an ambulance which took her to the hospital. She described in detail her injuries, her hospitalization, her pain and suffering, her expenses and continuing disability, which it will not be necessary to discuss here.

Plaintiff having just moved to the premises, was not familiar with the walkway but later learned through examination and use of the walk that it was very slick

when wet with dew, rain or snow, and different in this respect from an ordinary concrete walk. The green marble is shown to have an especially slippery surface and when wet it is described as being just like glass. She filed as Exhibits 1 and 2 to her testimony two photographs of the walkway and identified the spot where she fell as the green slab on the right side of the walk and identified the shiny spot on the green slab in Exhibit 1 as the reflection of her front porch light which was on when that photograph was taken.

Mr. Albert Bowen testified that he was out walking his dog when he heard Mrs. Stephens cry for help. He came and found her down in the snow and called an ambulance to take her to the hospital.

Mr. Forrest Allen testified that he was the owner of the Forrest Allen Tile Company; that he had been in the tile and marble business for many years, which business included the laying of inside and outside floors. He testified that marble is not suitable material for outside floors, particularly polished marble which is slick, and which is more slippery when wet with rain or snow. He examined the walk at 701 Crescent Road when it was dry and also when it was wet and identified Exhibits 1 and 2 as being photographs of the walk. He also described the walk as being made of scrap marble and identified the dark green slab as Verde Antique marble, which type he kept in stock and was familiar with. He testified that Verde Antique is a polished marble, is very hard and suitable for exterior store fronts but not normally used for floors or walks. He also testified that this type of marble would not be affected by exposure to weather and would remain slick and that a marble walkway is more slippery than one made of concrete, especially when wet; that the Verde

Antique slab in this walkway was more slippery than the rest of the walkway. He tested it for slipperiness when wet and when dry but he had not seen the walk with snow on it.

Mrs. Rita Vogel testified that she and her family were tenants of the downstairs apartment at 701 Crescent Road and had lived there since September, 1965. She had noticed that the walk was slick when wet and, therefore, seldom used it but walked through the grass instead. She also stated: "Well, it is a marble walk. I am aware that marble, when wet, is dangerous." She went out and saw Mrs. Stephens after she had fallen in the snow but did not remember how deep the snow was.

The deposition of Dr. Andrew Miller, an orthopedic surgeon, was read wherein he described plaintiff's injuries but this need not be repeated here.

The plaintiff called Mrs. Nancy Hutton as a witness and, upon objection to her testimony by the defendant, the Court excused the jury and allowed her to be examined in the absence of the jury. After she had finished testifying the Court excluded her testimony in its entirety and this is assigned as error.

In the absence of the jury she testified that her husband had owned the duplex at 701 Crescent Road and she had lived there with her children from 1961 until August 1965; that there had been no change in the walk during the period she lived there; that the walk was more slippery than regular concrete and that she had slipped and fallen on it several times while walking down from the street to the house; that it was more slippery when wet than when dry and that the dark green pieces of marble were more slick than the other slabs; that she did

not remember whether she had fallen when there was snow on the walk or not but that she had fallen on the walk more than once.

Defendant, Miss Murphree, testified that she had acquired the property in question about four and one-half months before the accident; that at the time of the accident there was seven or eight inches of snow on the ground but she didn't know anything about how the accident happened and that she did not know of anyone either before January 22, 1966 or afterward who had slipped and fallen on said walk. On cross-examination she testified that there had been no change in the walk from the time she bought the property until the accident in question.

Harold J. Smith, a Meteorologist, testified concerning the weather and stated that, according to Weather Bureau records, the snow started on January 21, 1966, at about 10:25 P.M. and a light fall continued until about 3:05 P.M. January 22nd, and that there was an accumulation of about eight inches. He said that the maximum temperature on January 22nd was 38 degrees shortly after midnight and the minimum temperature for that day was 29 degrees and at 2:35 P.M. about the time of the accident on January 22nd the temperature was 31 degrees.

At the conclusion of defendant's proof which showed that there had been no change in the walkway plaintiff re-called Mrs. Nancy Hutton, in the absence of the jury, and she testified substantially as she had previously. However, again on objection of the defendant, this testimony was excluded.

As hereinabove stated, at the close of the proof the defendant moved for a directed verdict on the ground that there was no evidence to support a verdict for plaintiff and that plaintiff was guilty of contributory negligence as a matter of law. After argument of counsel the Court granted the motion stating: "There is no proof in this record of any negligence on the part of the defendant, Mary Elizabeth Murphree."

## III

## ASSIGNMENTS OF ERROR

There are two assignments which are to the effect that (1) the Court erred in granting Defendant's motion for a directed verdict at the close of all the evidence since there is material evidence in the record upon which the jury could have found in favor of the plaintiff on the questions of negligence of the defendant and contributory negligence of plaintiff; and

(2) The Court erred in excluding in its entirety the testimony of Mrs. Nancy Hutton, since her testimony, taken in the absence of the jury, was shown to be competent, relevant and material and its exclusion was highly prejudicial to plaintiff.

The excluded testimony of Mrs. Hutton was to the effect that she lived in the house at 701 Crescent Road for several years immediately prior to the time it was purchased by the defendant; that the condition of the walkway in question remained the same during the time she was here; that she found it to be unusually slippery, particularly when wet, and much more so than a regular concrete walk; that the green piece of marble was more slippery than the rest of the walk; that she slipped and

fell more than once on the walk at about the place where the green piece of marble was located; that, thereafter, she walked on the walkway only with unusual care.

## IV.

## OUR CONCLUSIONS

It is pointed out by counsel that there is no issue here as to whether or not the defendant was negligent in failing to clear the walkway of snow prior to the time plaintiff slipped and fell. Counsel for defendant states that there is no question but that the defendant did retain control of the walkway in question, and under the rule laid down in Woods v. Forest Hill Cemetery, Inc., 183 Tenn. 413, 192 S.W.2d 987, it was the duty of defendant to keep the walk in good repair and safe condition.

In considering Assignment No. 1, the rule which has been stated so many times in this Court and the Supreme Court, is applicable, that, in reviewing the action of the Trial Court in directing a verdict for the defendant, the evidence must be considered in its most favorable light to the plaintiff, taking the strongest legitimate view of it in favor of the opponent of the motion, allowing all reasonable inferences in his favor and discarding all countervailing evidence, and, if there is any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be overruled.

Since it is conceded that the walkway in question remained in possession under the control of defendant for the common use of the tenants, it became a continuing duty of the defendant to exercise reasonable care to see that the walkways were in safe condition for the use of

the tenants and that no hazardous condition thereof was maintained. As was held in Wilcox v. Hines, 100 Tenn. 538, 46 S.W. 297, 41 L.R.A. 278 and Woods v. Forest Hill Cemetery, Inc., 183 Tenn. 413, 192 S.W.2d 987, "It is the duty of the landlord to keep in good repair and safe condition such common passage ways."

In Prosser on Torts, 2d Ed. p. 471, the rule is stated to be that where different parts of a building are leased to several tenants but remain in possession and control of the landlord, the position of the landlord is closely analogous to that of a possessor who permits visitors to enter for purposes of their own, and those who come in the course of the expected use may be considered as his invitees. The text continues:

"He is therefore under an affirmative obligation to exercise reasonable care to inspect and repair such parts of the premises for the protection of the lessee; and the duty extends also to members of the tenant's family, his employees, his invitees, his guests, and others on the land in the right of the tenant, since their presence is a part of the normal use of the premises for which the lessor holds them open."

It is thus argued by counsel for plaintiff, that defendant was under an affirmative duty to maintain the walkways in a safe condition and that, if the walkway in question was allowed to be constructed or maintained in such manner that it was rendered unusually slippery so as to become a hazard by reason of such expected elements as snow and rain, the owner was under the duty to exercise reasonable care and diligence to discover such condition and to take appropriate measures for the protection of the tenants and other legitimate users of it.

Osborn v. City of Nashville, 182 Tenn. 197, 185 S.W.2d 510, is a case where plaintiff slipped and fell on a wet sidewalk which the abutting property owner had painted some months earlier. Suit was brought against the property owner and the City on the theory that the sidewalk was in such condition as to be slippery when wet and that the two defendants were negligent. The testimony was to the effect that the glossy paint on the sidewalk made it slippery when wet while the unpainted sidewalk on either side of it was not abnormally slippery. There was testimony that prior to plaintiff's fall others had slipped and fallen on the same painted sidewalk when it was wet. The Supreme Court held that the question of negligence of the defendants and the contributory negligence of the plaintiff, were jury questions.

In McFerrin v. Crescent Amusement Company, 51 Tenn.App. 13, 364 S.W.2d 102, this Court discussed the question of liability where the plaintiff slipped and fell on a portion of the sidewalk constructed of terrazzo when it was wet, seriously injuring himself. It was pointed out in the opinion that terrazzo is slick when wet; that it was on a slope or incline and being composed of marble chips and cement, is slick unless an abrasive material is added and that this terrazzo surface did not contain sufficient abrasive material. The proof showed that other persons had slipped and fallen on this same terrazzo. We held that the abutting property owner, as well as the City, was liable.

Counsel for plaintiff in a supplemental brief calls attention to an unreported opinion of this Court filed March 27, 1964, in the case of Leonora Gunn v. Life & Casualty Insurance Company of Tennessee, which opinion was written by the writer of this opinion. In that case we

sustained a jury verdict and judgment for the plaintiff, overruling assignments similar to those in the case at bar.

In the Gunn case, it was shown that the plaintiff slipped and fell on the sidewalk alongside the Life and Casualty Building in Nashville when the sidewalk was covered with snow. It was also shown that the sidewalk was constructed of a terrazzo, a marble material, which was slippery when wet. It is interesting to note that in that case two witnesses were allowed to testify that they had slipped on this same sidewalk when it was wet.

Counsel for plaintiff cites and quotes from several cases in other jurisdictions. In the California case of Roeland v. Geratic Enterprises, Inc., 187 Cal.App.2d 280, 9 Cal. Rptr. 538, the Court held that, whether or not a slippery floor constitutes a dangerous condition is a question of fact for the jury. Also, that direct evidence is not necessary to establish that the defendant had notice of a dangerous condition, since such notice might be established by inference—citing cases. The Court also held that it is generally a question of fact for the jury as to whether under all the circumstances the defective condition existed long enought so that a reasonable man, exercising reasonable care, would have discovered it.

In the Illinois case of Sommese v. Maling Brothers, Inc., 65 Ill.App.2d 223, 213 N.E.2d 153, the Court stated:

"Questions which are composed of factors sufficient to cause reasonable men to arrive at different results should not be determined as matters of law."

In Erickson v. Walgreen Drug Company, 120 Utah 31, 232 P.2d 210, 31 A.L.R.2d 177 the Court significantly stated as follows:

''While there is no evidence of any incident occurring which would have put the appellant on notice that the terrazzo was slippery when wet, such evidence is not necessary to establish liability on the part of the appellant. The latter was in the actual possession of the building and had a duty to search out defects in the premises in order that they be reasonably safe for the presence of business visitors.''

It is earnestly insisted by counsel for defendant that plaintiff was walking in snow and should have known, as all reasonable persons know, that snow is slippery, and, since it is agreed that there had not been sufficient time for the defendant to have the walkway cleared of snow, it follows that there was no negligence on her part causing or proximately contributing to the injury of the plaintiff.

It is shown by this record that plaintiff was walking in soft snow at the time of the accident. According to the deposition of defendant's witness Harold J. Smith, a Meteorologist, the snow had begun 10:25 P.M. the night of January 21st and temperature on January 22nd shortly after midnight was 38 degrees. The minimum temperature for that day was 29 degrees, and at 2:35 P.M. on January 22nd, about the time of the accident, the temperature was 31 degrees. From common knowledge we know that snow falling in a temperature of 38 degrees and with a gradually declining temperature to 29 degrees and on to 31 degrees, is not conducive to the formation of ice on the pavement underneath the snow. We also know that at those temperatures the snow would be soft and not hard and slippery on top. We find nothing in the record to indicate that the snow on which the plaintiff was walking

when she fell had been packed down and frozen so as to form a slick surface.

We are impressed with the fact that the testimony of the plaintiff is to the effect that, when her foot slipped and she fell, the snow came up off the paved surface of the walkway exposing the green piece of polished marble on which her foot had slipped.

Taking into consideration the evidence in the record that this particular type of marble was polished and extremely slick, whether wet or dry, but slippery when wet, we think the jury might have reasonably concluded that the cause of plaintiff's fall was the unusual character of the marble walkway and that it was slippery in an unusual way so as to present a hazard to one walking on it when it was wet, whether from rain or snow or otherwise.

It is also earnestly argued by counsel for defendant that the record does not disclose that defendant had any notice of the slippery condition of this walkway under the conditions shown to have existed when the plaintiff fell.

We cannot accept this as a necessary conclusion from the facts shown by the record. The defendant had owned this property for a number of months and, even though she may not have been aware that anyone had slipped and fallen on the walk, yet, in view of the unusual character of the marble, particularly the green polished marble slab on which plaintiff fell, we think that a reasonable conclusion might be drawn that she should have known, by the exercise of ordinary care, that it presented a hazard to those who walked on it.

It results that the first assignment is sustained, the Court being of the opinion that reasonable minds might very well differ as to the inferences to be drawn and conclusions to be reached from the facts in this case, and that a jury question is made out by the proof.

. We are also of the opinion that the Trial Judge should not have excluded in its entirety the testimony of Mrs. Nancy Hutton. Certain portions of her testimony should have been admitted in evidence with proper instructions to the jury.

It results that the judgment of the Trial Court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

Puryear and Todd, JJ., concur.