473 P.2d 394

Darren J. POLLICK, by and through his Guardian ad Litem, John R. Pollick, and John R. Pollick, Plaintiffs and Respondents,

v.

J. C. PENNEY COMPANY, a corporation, Defendant and Appellant.

No. 11880.

Supreme Court of Utah.

Aug. 4, 1970.

Stephen B. Nebeker, M. John Ashton, of Ray, Quinney & Nebeker, Salt Lake City, for appellant.

Richard C. Dibblee, Robert D. Moore, of Rawlings, Roberts & Black, Salt Lake City, for respondents.

CROCKETT, Chief Justice:

Defendant J. C. Penney Company appeals from a jury verdict and judgment entered

thereon in favor of the plaintiff, Darren J. Pollick, who suffered injuries when he fell over a guardrail protecting a stair well in defendant's Murray, Utah, store.

On the morning of May 5, 1964, John R. Pollick, along with his then three-year-old son, Darren, went into the defendant's store, where he purchased a dress for his wife. He released Darren's hand and his attention was otherwise occupied while he was signing the charge slip. Meanwhile, the child climbed upon the banister, and fell 11 feet to a display table on the floor below. He suffered a broken leg, shock and painful bruises.

The defendant's attack upon the judgment which we have found controlling is that there is no basis shown upon which it could be found negligent in causing the child's injury and thus be held responsible in damages. This conclusion is predicated upon our agreement with its argument that such a recovery can be had only if it is shown that the defendant caused the injury by some wilful or negligent wrongful act of commission or omission in violation of its duty to use ordinary and reasonable care under the circumstances for the safety of others,[1] or as is sometimes otherwise stated: is guilty of some conduct which it should in the exercise of such reasonable care have foreseen would expose others to an unreasonable risk of harm.[2]

■ The plaintiffs' own statement in their brief as to the basis upon which they endeavored to meet the foregoing requirement is:

> Plaintiffs proceeded upon the theory [that] they were business invitees and [that] defendant neglected to exercise due care to make the premises reasonably safe for them by *maintaining the* aforementioned *banister* [guardrail] *in a dangerous and unsafe condition.* (Emphasis added.)

In analyzing the evidence to see if it provides a basis for the plaintiffs' conclusion stated in the emphasized language, they are entitled to have us consider the evidence and whatever reasonable inferences can fairly be drawn therefrom in the light most favorable to their contention.[3]

■ It is a fact of common knowledge that buildings having more than one floor have stairways upon which to move from one floor to another. This necessitates an opening in the floor into which there is an inherent but plain-to-be-seen danger of falling down the stairs at one end or into the

---

1. See Osborne v. Montgomery, 203 Wis. 223, 234 N.W. 372; 3 Utah L.Rev. 280, Restatement (Second), Torts, Secs. 284, 298 (1965).

2. See Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287, 289, Restatement (Second), Torts, Sec. 298 (1965).

3. Memmott v. U. S. Fuel Co., 22 Utah 2d 356, 453 P.2d 155.

stair well at the other. It is therefore essential that such a stairway and stair well have some sort of a guardrail or banister to safeguard against persons falling therein. In this instance there was such a banister or guardrail. It was described by the father:

Q. Now, Mr. Pollick, I've also drawn here a drawing which represented the bannister and have you examined and looked at that bannister, after the accident?

A. After the accident, yes.

Q. And will you describe it to the jury and what it looks like?

A. Looking at the bannister from a side view, it has a mop board, I would estimate from six inches to one foot high, with a lip at the top.

Q. Would that be such as we have indicated here?

A. Yes, sir.

Q. Do you mind, Mr. Nebeker, if I write "mop board" on there? Right here, sir. And that's approximately how high?

A. Six inches to a foot.

Q. Okay. Then what is it?

A. From that point up it looks like some type of a solid form of either dry wall or plaster, something of that nature.

Q. Then what's on top?

A. There is a wood cap on top of the bannister itself, then on top of that is a wooden hand railing.

As appears from the foregoing it is not shown that there was anything out of the ordinary about the banister. The only things plaintiffs are able to suggest as to a dangerous condition are that the banister, instead of being 36 inches high, should have been higher; and that the top of the mopboard was about $\frac{3}{8}$ of an inch wide, so the boy could get his toe thereon and thus make it easier to climb over. But except for the fact that this accident occurred, there is no evidence that those or any other aspects of the banister or the mopboard were in any way at variance with the ordinary construction of such a protective guardrail or banister; nor that there was anything about them from which defendant should have realized that others would be exposed to an unreasonable risk of harm which would thus constitute a failure of defendant to comply with its duty to use reasonable care for the safety of its business invitees.[4]

It is indeed unfortunate that the little boy, while his father's attention was diverted, followed the bent of little boys to climb on things and fell over the guardrail,

4. See Erickson v. Walgreen Drug Co., 120 Utah 31, 232 P.2d 210, and DeWeese v. J. C. Penney Co., 5 Utah 2d 116, 297 P.2d 898.

suffering the painful injuries. But the mere fact that such misfortune occurs does not necessarily mean that someone else must respond in damages.[5] Inasmuch as we are unable to see in the evidence any basis upon which reasonable minds acting fairly thereon could conclude that there was anything about the construction or maintenance of the guardrail which constituted failure of defendant to observe reasonable care for the safety of others, there is no foundation for imposing liability on it. Consequently it is necessary that the judgment be vacated. It is so ordered. Costs to defendant (appellant).

CALLISTER, TUCKETT, and HENRIOD, JJ., concur.

ELLETT, Justice (dissenting).

I dissent.

This is an appeal from a judgment entered on a jury verdict, We are therefore required to view the evidence in a light most favorable to sustain the judgment, and if there is any competent evidence in the record which would justify the jury verdict, we should affirm.[1]

The facts are not in dispute. It is only the conclusions to be drawn therefrom which give rise to the controversy.

Darren J. Pollick was a three-year-old boy with his father in defendant's store. While the father was paying for merchandise purchased, Darren walked a short distance to a stair well around which was a banister almost 36 inches high. The city ordinances required a height of 36 inches, but plaintiff makes no claim of liability on the part of the defendant because of the shortage of height. He does, however, contend that the banister was not safe for minor business guests and invitees and this claim is urged because the banister had a mopboard around the base which was seven and one-half inches high.

The infant plaintiff climbed the mopboard and becoming overbalanced fell to the floor below.

I think it was a jury question as to whether the defendant should have foreseen, when it constructed and as it maintained the mopboard, that a child of tender years might climb the same and thus become overbalanced and fall.

The jury found negligence on the part of the defendant and I think it was within their province to do so. It ill behooves us to substitute our judgment for that of the triers of the fact, and I would affirm the judgment and award costs to the respondent.

5. See statement in Mortensen v. First Security Bank of Utah, 12 Utah 2d 89, 363 P.2d 75 (1961).

1. Burkhalter v. Grandeur Homes, 17 Utah 2d 278, 409 P.2d 614; Smith v. Gallegos, 16 Utah 2d 344, 400 P.2d 570.