297 P.2d 898

Sarah Margaret DE WEESE, Plaintiff and Respondent,

v.

J. C. PENNEY COMPANY, a corporation, Defendant and Appellant.

No. 8347.

Supreme Court of Utah.

May 25, 1956.

Ray, Quinney & Nebeker, Salt Lake City, for appellant.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for respondent.

CROCKETT, Justice.

Sarah M. DeWeese slipped and fell in the entrance of the J. C. Penney Department Store at 213 South Main Street in Salt Lake City on the evening of November 30, 1953. From a jury verdict and judgment for the plaintiff, defendant appeals, attacking the judgment on the ground that the trial court erred in respect to a) rulings on evidence, b) submission of the question of defendant's negligence to the jury, and c) in not ruling that plaintiff was guilty of contributory negligence as a matter of law.

On the day of the accident Mrs. DeWeese left her home in the southeast part of town at 8 p. m. She caught a bus to go downtown to do some shopping, the stores being open on Monday night. Just after boarding the bus she noticed that snow began to fall in large flakes. She left the bus at Second South and State Streets and walked the one and one-fourth blocks to the Penney Store on Main Sreet. Snow was still falling and the sidewalks were wet. As she proceeded into the terrazzo entrance of defendant's store, which slopes upward as one enters, she admits noticing that the floor was wet and had muddy tracks upon it but says she had no thought of it

being slick. She states that as she progressed a step or two she slipped, her right foot going forward and her left foot folding under her as she fell. She was helped into the store where she phoned her husband, an assistant manager of the W. T. Grant Company store located just south of Penney's, who came immediately to assist her. It is without dispute that there were no rubber mats or abrasives on the floor at that time. Medical examination later showed that Mrs. DeWeese suffered a severe injury to the lumbro sacral region of her back which will require her to undergo a spinal fusion operation to correct.

a) Rulings on evidence.

The principal attack made upon the judgment relates to errors assigned in admitting certain testimony which defendant characterizes as "an attempt by plaintiff to set up the purported actions and customs of W. T. Grant's store as a standard for defendant to meet." There can be no doubt that it would not have been proper to use the procedure of any particular individual, or of the W. T. Grant Co. store, either generally, or in connection with this particular storm, as a standard of care upon which to determine whether the Penney Company was negligent.[1]

The testimony of Mr. Frank Caffall is singled out as having the fault just referred to. A man of many years' experience in installing terrazzo surfaces, he was

1. See Jackson v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company, 238 Iowa 1253, 30 N.W.2d 97; 67 C.J.S., Parties, § 79, p. 1049; 38 Am.Jur. 1015.

called to testify as an expert. Asked generally about such surfaces, in connection therewith, he was questioned whether he had observed the terrazzo surface at Grant's and,

"Q. Did you observe whether the substance had an abrasive in it—that terrazzo surface at W. T. Grant's?

"Mr. Aadnesen, defendant's counsel: Object to that as immaterial.

"The Court: That may be answered 'yes' or 'no.'

 * * * * * *

"Q. I am talking about W. T. Grant —entrance to Grant's store at the present time, Mr. Caffall. A. Oh, yes, that has London Grits in it."

After a further question and answer,

"Mr. Aadnesen: May the record show that my objection goes to this entire line as to what W. T. Grant has?"

to which the Court answered: "Yes." Upon the next question pertaining to the surfacing at Grant's, an objection that it was immaterial was sustained. It will be noted that there was no objection to the particular question which elicited the statement that Grant's surface had "London Grits in it. The objection to the "entire line" came after that question, and there was no motion to strike it. It is therefore doubtful that defendant is now in a position to complain of this evidence. However, we need not concern ourselves with

niceties with respect thereto for reasons presently to be stated.

Assuming for the purpose of this discussion that the evidence above recited was admitted over proper objection by the defendant, it was neither incompetent nor could it have been prejudicial. It is undoubtedly true that if this question were considered in isolation, it would be immaterial whether the surfacing at the Grant store contained an abrasive or not. But evidence is not to be considered in isolation; it should be appraised in context with the entire testimony and in the light of the purpose for which it is offered. Mr. Caffall's testimony was to the effect that all terrazzo surfacing becomes slick when wet, and that abrasives are used in the composition to roughen it. It is not amiss to permit him to refer to his specific knowledge or observation of particular surfaces in implementation and illustration of his statement that such abrasives were necessary and were customarily used. This would be true unless it should appear that the jury might understand that the surfacing of the Grant Company was being set up as an example or standard of care which the defendant company should meet, a circumstance not present here.

A more important and controlling consideration in regard to Mr. Caffall's evidence is that it could relate only to the issue as to whether terrazzo surfacing was in fact slippery when wet and whether some protective measure was necessary. The

record is unequivocal that there was no disagreement between the parties about this fact and that it is both customary and in keeping with due care to use rubber mats or some abrasive such as feldspar on the surfacing as a protection against patrons slipping when it is raining or snowing. In repartee concerning the evidence during the trial, the defendant's counsel stated:

> "* * * If he desires, we would be glad to stipulate that mats and feldspar are used on terrazzo during inclement weather."

and in their brief,

> "Admittedly the defendant J. C. Penney Co. used mats and feldspar during inclement weather just as they were used by other stores on Main Street, including W. T. Grant's."

In fact, defendant makes a point of the fact that it had both mats and feldspar readily available for use. Thus the evidence that abrasives were used by Grant's and others in terrazzo surfacing was not discordant to the position that the defendant itself took.

■ The other matter of evidence which defendant stresses in support of its argument that its standard of care was being measured against that of the Grant Company relates to the testimony of plaintiff's husband, Hugh DeWeese. He was engaged in his duties as assistant manager of the Grant store when the incident occurred and upon call came to assist his wife. He told of such facts and related that the mats in their store were already out when he left. Upon motion of counsel for the defendant that such evidence be stricken and the jury admonished to disregard it, the court properly allowed such motion. This occurrence does not support the position contended for by the defendant, but indicates to the contrary, that the court was not under any misunderstanding that the standard of care of the W. T. Grant Company could be used to measure the propriety of the defendant's conduct, and that he was not allowing it to be so presented to the jury. This is in accord with the import of the entire record. From it and the instructions we do not see any reasonable basis for apprehension that the jury was under any mistaken belief that the defendant was required to meet the particular procedure of the W. T. Grant store. Testimony as to the customs and practices of others similarly situated was admitted as bearing upon the issue of what ordinary and reasonable care under the circumstances was. Such was the only duty of care submitted to the jury as reflected in Instruction No. 10, wherein the court correctly charged that it was the defendant's duty, "* * * to exercise reasonable care to keep the entranceway to [its] store reasonably safe for the use of its customers."

b) *Defendant's negligence.*

The essential inquiry relating to defendant's negligence is whether in performing its duty of due care just recited, it knew

or should have known, that a dangerous condition existed and whether sufficient time elapsed thereafter that, in due care, it should have put out the mats or sprinkled feldspar on the surface to reduce the slipperiness.

■ This case differs from those involving a foreign substance such as spilled oil or grease, or where a pool of water is allowed to accumulate, creating a hazardous condition which, under most circumstances, is as easily observable to the business invitee as the store owner.[2] The terrazzo surfacing is part of the permanent structure of the building. While it is true that the construction and maintenance of the entranceway of terrazzo on an inclined plane does not of itself constitute negligence, it comes within the rule that a negligent act may be one which "creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force of nature."[3]

■■ The argument is made that the effect of affirmance of this judgment will be to make stores such as defendant insurers of the safety of their patrons, which argument we reject. The only basis upon which liability can be predicated is negligence. The standard upon which negligence is gauged is that of ordinary, reasonable care under the circumstances, which standard it is peculiarly fitting that juries determine. It is to be borne in mind that we are not holding that the defendant's conduct amounted to negligence as a matter of law. We are only required to determine whether there was any legitimate basis in the evidence upon which reasonable minds could believe that the defendant failed to meet its standard of reasonable care under the circumstances for the safety of its customers.

■ The evidence clearly shows that the defendant knew of the characteristic of terrazzo to become slippery when wet, and that it was its custom, and the custom of other stores with similar surfacing to use rubber mats or grit to prevent slipperiness during stormy weather. In view of this a jury question was posed as to whether the defendant discharged its duty to use reasonable diligence and watchfulness for storms, and to take such measures as the exercise of reasonable care under the circumstances would dictate.[4]

The remaining question is as to the time element: was there sufficient time after the storm commenced that it should reason-

2. See Brody v. Albert Lifson & Sons, Inc., 1955, 17 N.J. 383, 111 A.2d 504; Oil on floor see Frank v. J. C. Penney Co., 133 Cal.App.2d 123, 283 P.2d 291; Water on floor see Stoddard v. Roberts Public Markets, Inc., 27 Cal.App.2d 163, 80 P.2d 519; Lindsay v. Eccles Hotel Co., 3 Utah 2d 364, 284 P.2d 477.

3. Restatement of Torts, Par. 302(b); See also Erickson v. Walgreen Drug Co., 120 Utah 31, 232 P.2d 210, 31 A.L.R.2d 177; W. T. Grant Co. v. Karren, 10 Cir., 190 F.2d 710.

4. See Erickson v. Walgreen Drug Co., supra.

ably have been expected to put out the mats or feldspar to reduce the slipperiness? The evidence is in sharp dispute both as to the amount of precipitation and the time that had elapsed. The defendant claimed that it had been raining or snowing for only 5 to 10 minutes and that the amount was very slight, whereas the plaintiff said that it continued to snow from the time she boarded the bus; that it usually took 15 or 20 minutes to make the trip to town and probably another 5 to 10 minutes to walk from the bus stop to the Penney store. The official weather report admitted in evidence showed a trace of precipitation beginning at 8:12 p. m. and continuing until 8:34 p. m. that evening, which is not necessarily inconsistent with the plaintiff's statement. It is recognized that in this mountain valley storms are sometimes spotty and irregular as to the time and place of starting, duration and amount of precipitation. Viewing the evidence in the light most favorable to the plaintiff,[5] it could have been 25 to 30 minutes after the storm began that the accident occurred, during which time it was, of course, observable by the defendant's employees out of the windows. Upon the basis of such evidence we conclude that reasonable minds could find that sufficient precipitation had fallen and that enough time had elapsed so that in the exercise of ordinary and reasonable care for the safety of its customers, the defendant should have employed the corrective measures.

c) Contributory negligence of the plaintiff.

■ Mrs. DeWeese was entitled to assume that the floor was reasonably safe. Though she saw dampness and muddy tracks thereon, there was nothing to give her warning that it was particularly slippery when wet and there is no evidence that she was familiar with such fact. She testified to the contrary. In the nature of things, one entering a store must give at least part of her attention to watching where she is going to avoid other persons or obstacles. She obviously is not required, and likely in due care cannot, give her entire attention to any one hazard such as possible extraordinary slipperiness of the floor, which she has no particular reason to anticipate. Her testimony is susceptible of interpretation that she used the degree of care which ordinary and reasonable persons observe under such circumstances, which was the measure of her duty.[6]

■ We do not regard the evidence of her negligence as being so certain and persuasive that all reasonable minds would so find. As we stated in Stickle v. Union Pacific Railroad Co.:[7] " * * * the question of contributory negligence is for the

---

5. Taylor v. Weber County, 4 Utah 2d 328, 293 P.2d 925.

6. Coombs v. Perry, 2 Utah 2d 381, 275 P. 2d 680.

7. Utah, 251 P.2d 867, 870; see also Linden v. Anchor Min. Co., 20 Utah 134, 58 P. 355.

jury whenever the evidence is such that jurors, acting fairly and reasonably, may say that they are not convinced by a preponderance of the evidence that the plaintiff was guilty of negligence which proximately contributed to cause his own injury." The action of the trial judge was consistent with the policy which has invariably been approved by this court of submitting disputed issues as to negligence and contributory negligence to the jury unless the matter is so clear as to be free from doubt and reasonable minds would not differ thereon.[8]

Affirmed. Costs to respondent.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD, Justice (dissenting).

I am unable to agree with the decision here when read in the light of Gaddis v. Ladies Literary Club,[1] a recent case decided by this court. In that case there was testimony that the floor was slippery, as was the testimony here, yet this court would not permit the case to go to the jury.

Nor can I agree with the pronouncements in this case which, in substance and effect, declare terrazzo, as such, to be dangerous per se, nor with the implication of the main opinion that because people customarily use mats on terrazzo in wet weather, that they are negligent if they do *not* use such mats.

Furthermore, I am of the opinion that in allowing recovery under the facts of this case, we approach a rule of absolute insurability on the part of merchants whenever it storms and persons use their entrances, if a mat is not placed therein,—a circumstance which, in my opinion, may or may not be evidence of negligence, and which may or may not be an exercise of greater care than that which such merchants need exercise.

WORTHEN, Justice (dissenting).

I am unable to agree with the conclusion of the majority opinion, I believe that the case should be reversed and the trial court should be directed to either dismiss the action or grant a new trial.

The witness Caffall, a tile contractor, was properly permitted to testify as to the nature of terrazzo; that it is made of cement, marble chips and a suitable color; that it is laid in a plastic form; after it is set, it is ground smooth and polished; that to obviate the slickness, nonslip materials such as carborundum and London grits are added. But the witness was improperly permitted to testify over objection that the terrazzo at the entrance to W. T. Grant Co. store had London grits in it. The only pur-

---

8. See *Malizia* v. Oregon Short Line R. Co., 53 Utah 122, 178 P. 756; Newton v. Oregon Short Line R. Co., 43 Utah 219, 134 P. 567, 570.

1. 4 Utah 2d 121, 288 P.2d 785.

pose of offering this testimony was to raise the inference that greater care was exercised in the laying of the terrazzo at the entrance of a nearby competitor by putting in London grits to make it less slick. There was no basis to permit this testimony. Caffall testified that he had never made any examination of the entrance to the defendant's store, and did not know of the composition of the terrazzo in defendant's entrance.

In fact the only purpose that could be accomplished and I assume the intended purpose was to give the impression that the defendant should, but did not, provide the same protection as was afforded at Grant's. The testimony of plaintiff's husband, assistant manager of the W. T. Grant Co., as to his experience with other Grant Company stores throughout the country and his testimony that the mats were out at Grant's store when he was called to come to defendant's store was error, as offering a standard not alone as to the fact that mats should be used, but also as to the diligence and promptness of setting them out as was done at Grant's. For these reasons I am of the opinion that the admission of the evidence complained of was prejudicial and that a new trial should be granted unless the court shall agree with me on the second point of my dissent.

The writer is compelled to confess that he is unable to see that this court has been consistent in its application of the rules which should be applied in such cases.

When as here the customer enters a store, and the actual condition of the underfoot surface is as well known to the customer as to the person in charge of the property, and generally before the proprietor, I am unwilling to make the proprietor an insurer that the customer will not slip and sustain injury. The plaintiff here was fully apprised of the atmospheric conditions before the proprietor. She saw the snow falling soon after she boarded the bus. She walked more than 660 feet on wet pavement, without rubbers or other protection from the wet or against slipping, and she was near the Grant store where her husband acted as assistant manager and she could have protected herself by entering that store and getting rubbers or having them procured for her.

The plaintiff knew that the terrazzo entranceway was wet. She testified that she noticed the floor of the entranceway was wet.

It cannot be contended that there is any inherent danger in such an entranceway because of its slant or slope; it was less than the slope of the sidewalk itself. The majority opinion agrees that the construction and maintenance of the entranceway of terrazzo on an inclined plane does not of itself constitute negligence, and it should be here observed that for plaintiff to relate the terrazzo entranceway to her fall as cause and effect she must do more than show that she slipped. It is most significant that plaintiff failed to offer to establish the fact.

that any other person had fallen on the entranceway during the 17 years since it was installed. It is very persuasive indeed that if during those 17 years no other person fell that there must be negligence other than defendant's resulting in plaintiff's fall on November 30, 1953. Nor did plaintiff offer to show that she was the only person who passed over the entranceway after the storm started. That could not be established because the wet in the entranceway was tracked in by other customers. Plaintiff failed to offer to establish that any of them had slipped—probably for a very excellent reason—no other person had fallen.

I am not unmindful that this court in Erickson v. Walgreen Drug Co.[1] said "Evidence of the absence of accidents occurring prior to the accident complained of may not be admissible to establish that an unsafe condition did not exist at the time of the accident in question." The statement was unnecessary to the decision; the judgment having been reversed and a new trial ordered on other grounds. The statement is not a correct statement of the rule of evidence and the great weight of authority supports the use of such evidence to establish the nonexistence of an unsafe or hazardous condition.[2] So the absence of any proof or even suggestion that others have slipped is very persuasive of the fact that the surface is not dangerous.

I am of the opinion that we reached the proper result in the recent case of Gaddis v. Ladies Literary Club.[3] There the plaintiff slipped and fell upon the stage floor of defendant's building. The evidence was undisputed that wax had been recently applied and buffed with a hand buffer to a high shine. We held that proof that the floor is slippery did not present a jury question as to whether such slipperiness requires the determination by the jury as to whether or not the floor was so slippery as to constitute a breach of the duty which defendant owed its invitees. This court speaking through Chief Justice McDonough said:

"The majority of courts in the United States hold that the mere application of wax to a floor will not constitute negligence, even though having some tendency to make the floor more slippery. [Citing cases.] To hold otherwise, these courts reason, is to permit the jury to act upon speculation and conjecture upon the plaintiff's testimony that he slipped on a floor which he deemed to have been made excessively slippery by defendant's application of wax."

To deny a business guest or invitee any recovery for injury sustained by a fall on a waxed floor, polished to a high degree of slickness, because it would allow the jury to speculate and to permit the jury in the

1. 120 Utah 31, 232 P.2d 210, 214.

2. Annotation to Erickson case, 31 A.L.R. 2d p. 190.

3. 4 Utah 2d 121, 288 P.2d 785, 786.

instant case to speculate upon plaintiff's testimony that she slipped on the terrazzo entrance to defendant's store requires a sharper blade than yet devised to sever the factors distinguishing one case from the other.

In the case of the highly polished floor the business invitee enters upon a floor within the building of defendant—a floor made slick by defendant's own act or the act of its servant. Yet we make no suggestion that defendant in that case owes a duty to even warn by posted sign or otherwise of the slick floor.

The writer is compelled to confess that he is unable to see that this court in its majority opinion is consistent in its application of the rules which apply in these cases.

Where as here the customer enters a store and the actual condition of the underfoot surface is as well known to her as to the proprietor of the store I am opposed to making the owner an insurer against injury which she may sustain regardless of conditions and am unwilling to permit the jury to speculate upon plaintiff's testimony that she slipped. In doing so we make fish of the Ladies Literary Club and fowl of defendant here.

The customer is apprised of the atmospheric conditions even before the proprietor of defendant's store. To hold as held by the majority opinion that as soon as the proprietor has a reasonable opportunity to be apprised of the storm defendant will be liable to anyone who falls without showing more is not in keeping with our holding in the Ladies Literary Club case, supra.

In my opinion no liability should be imposed unless it is shown that there is something intrinsically defective, dangerous and hazardous other than mere slipperiness—some intrinsically defective condition which the proprietor knows of and which the customer could not by the exercise of reasonable care have known.

Unless we are willing to declare that the mere fact of slipperiness alone is evidence of negligence on the part of a storekeeper then no jury should be permitted to accomplish the same result by throwing the case to them to speculate upon.

I trust that we have not reached that state of rationalization where we will surrender our functions to a jury, where we are unwilling to meet the conditions presented and say when there is no proper question for the jury, and that we will perform our duty and determine the case as we should as a law question.

Before any jury should be free to put its hand into the store till we should be able to say—yes be forced to say—that there is sufficient evidence of negligence when it is shown that the floor of an entranceway is slick from moisture deposited thereon by the shoes of customers who carried it from the sidewalk or street. There should be required something beyond mere slickness, some additional hazard of which the customer is not apprised and which is known

to the proprietor requiring notice, warning or some proper safeguard for the customer's protection. The customer should not be rewarded for either ignorance or failure to make use of his powers of observation.

The existence of a slick surface when terrazzo is wet is known to both the customer and the proprietor—both know that cement and tile are rendered slick when wet. It can hardly be suggested that a person who has been in our city as long as plaintiff whose husband is assistant manager of a business located on Main Street and in the same block as defendant's business when it was testified to by plaintiff's witness that 85% of the establishments on Main Street have terrazzo entrances that such person can plead ignorance of the effect of water upon these surfaces.

We charge one walking along the street with the obligation of keeping eyes open and seeing what is to be seen and hold that failure to see and heed what a reasonable man would or should see is negligence.

In S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132, judgment was entered on jury's verdict and the court of appeals affirmed the judgment and on appeal to the supreme court judgment was reversed.

The evidence disclosed that Mrs. Fader entered defendant's store; it was raining at the time and had been for some time immediately prior thereto. Mr. Fader, her husband, and Mr. Fader's brother and wife entered the store together. They were going to the basement for lunch. The floor immediately inside the door was somewhat wet and somewhat slippery due only to the fact that incoming customers had carried in water on their feet from the sidewalk, and the further fact that some rain had blown in as the door was opened by incoming and outgoing shoppers.

Mrs. Fader charged that the Kresge Co. was negligent in not having a rubber mat on this part of the floor; in permitting this moisture to be on the floor at this place; in not warning customers of the wet floor at this point, and in failing to exclude customers while this condition lasted and she averred that by reason of this dangerous condition of the floor she slipped and fell immediately after passing through the door. Motion for directed verdict made at close of plaintiff's case and after all evidence was in (denied). The Ohio Court in reversing the case said at pages 721–725 of 116 Ohio St., at pages 175 and 176 of 158 N.E., at pages 134 and 135 of 58 A.L.R.:

"In disposing of this case, we are accepting the testimony offered in support of Mrs. Fader's claims about the facts pertaining to the accident, and prior to the accident, as true. She went into the store as an invited shopper, with all the rights that any shopper has in entering any store, and the store owed her the same degree of care that all stores owe all patrons who enter;

*that is to say,* the store owed her the duty to exercise ordinary care for her protection against injury while in the store.

\* \* \* \* \* \*

"There were no defects in the floor itself. No claim is made that it was other than level, or that it was improperly constructed or surfaced in any manner. There was no soap or soapy water on the floor; no grease on the floor. There was nothing of any kind on the floor except the rain water which got there in the manner stated.

\* \* \* \* \* \*

"It is a fact known to all that many stores in all branches of trade have an inside door or passageway into the store, usually in the middle of the front. On each side of this passageway is a display window. The passage then extends back ten or twelve feet or more to the entrance door to the store. This passage usually has a slight slope from the door to the sidewalk, at which line there is no door. This slope is to carry away the rain that may blow into the passageway. The passageway is in fact practically a part of the sidewalk, but at the same time it is within the front line of the store, and under control of the store. Would any one contend that, if a person walked into such passageway when it was raining, and there slipped and fell, he could recover damages because

there was moisture on the floor of the passageway? Manifestly not. Everybody knows that, *when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor.* In this instance Mrs. Fader knew that her own shoes were wet when she went in there out of the rainstorm, and after walking on the wet sidewalk. Two of her companions who preceded her crossed the same wet spot as she did, and did not fall, and the one of them who testified in the case said that he did not turn and warn her about the wet spot, as there was nothing about it to indicate to him that it presented any danger \* \* \*.

"Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come. Everybody knows that the hallways between the outside doors of such buildings and the elevators or business counters inside the building during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they

otherwise would be. The same thing is true in the hallways of all post offices. *It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in* by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.

"It should be borne in mind that this accident did not happen in some dark walkway in the store where the shopper found it necessary to go. It occurred in broad daylight, and there is no pretense that there was anything to prevent any shopper from seeing and knowing precisely what the conditions were.

"Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from some one. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured. The character or extent of an injury has no bearing upon the question of the liability therefor; neither has the wealth nor the poverty of either party to such a litigation anything to do with the question of liability for the accident.

"There is no evidence in this case tending to prove, much less proving, that the Kresge Company was guilty of negligence in any particular as charged by Mrs. Fader in her petition. The trial court should have granted the motions of counsel for the Kresge Company for a directed verdict in its favor. Failing in this, the Court of Appeals should have reversed the judgment of the trial court and entered final judgment for the Kresge Company.

"The judgments of both courts will be reversed and final judgment entered here in favor of the plaintiff in error." (Emphasis added.)

In J. C. Penny Co., Inc., v. Robison, 128 Ohio St. 626, 193 N.E. 401, 403, 100 A.L.R. 705, plaintiff alleged that she was in defendant's store as an invitee; that the company had placed or caused to be placed on the floor oil or some other slippery substance making the floor dangerous to walk over and upon; that she slipped upon such slippery substance, fell and was injured.

The company denied that it placed oil or any other slippery substance on its floor to the extent that it was dangerous for persons to walk thereon, and denied that any oil or slippery substance was left on the floor negligently; that whatever injuries were sustained by plaintiff if any were the sole and proximate result of her own negligence. At the close of plaintiff's case the company moved for a directed verdict, which was granted. The court of appeals reversed the trial court and remanded the case. On appeal to the Ohio

Supreme Court the directed verdict of trial court was sustained and ordered reinstated.

Plaintiff testified that " 'My left foot slipped and I fell * * * and my heel came off in falling, the tap of my shoe was torn off of my heel. * * *' " The court observed, quoting from Kipp v. F. W. Woolworth Co., 150 App.Div. 283, 134 N. Y.S. 646, 647:

> " '* * * Thousands of people patronized this store every day. *No one else is shown to have fallen there.* No one claims *that any one else ever fell by reason of the oiling of the* floors * * * and the evidence does not fairly disclose any *extraordinary condition; * * *.' "* (Emphasis added.)

"There is no showing in the case before us that any one ever slipped on the floor in question."

As to the right to jury trial as to negligence or lack of negligence the court in J. C. Penny Co., Inc., v. Robison, 128 Ohio St. 626, 193 N.E. 401, at page 404, 100 A. L.R. 705, at page 710 said:

> "We agree that the right of trial by jury is guaranteed to all citizens by the Constitution of Ohio, and it cannot be invaded or violated by legislative act or judicial decree; but all this does not mean that all cases, regardless of evidentiary aspect, must be submitted to a jury. Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no

question for the jury is involved, as it is to deny to a citizen his trial by jury when he has the right."

In Fletcher v. North Mehornay Furniture Co. and Kansas City, Missouri, 359 Mo. 607, 222 S.W.2d 789, 790, it appears that plaintiff fell while walking in front of defendant's store in Kansas City. She alleged that defendant furniture company was negligent in that it had reconstructed a portion of the sidewalk in front of its store of a " 'marble or tile substance (terrazzo) which slanted and was smooth, slick, highly polished and glazed and when wet became slippery and was not reasonably safe for use by pedestrians to walk thereon' "; she alleged that the city was negligent in permitting the furniture company to construct said sidewalk and permitting it to remain in said unsafe condition; that both defendants "knew or by the exercise of the proper degree of care could have known that said sidewalk at said place was not reasonably safe for pedestrians to use' "; that at the time plaintiff fell " 'said sidewalk was wet and thereby rendered slick and slippery.' "

Defendant's answers consisted of a general denial and a plea of contributory negligence. The furniture company charged that her injuries were contributed to by her own negligence and inattention to her safety and without watching where she was stepping. The city charged that any injuries plaintiff received " 'were directly caused by plaintiff's negligence in failing

to use her eyes and senses * * *.'" The Missouri court said:

"In Schmoll v. National Shirt Shops, 354 Mo. 1164, 193 S.W.2d 605, the plaintiff fell on the terrazzo entrance to the defendant's store and was injured. In that case the terrazzo was wet and slick as in the present case; embedded in the terrazzo in that case were brass letters and these were wet and slick. It was held that the plaintiff could not recover. In ruling the case the court said, 193 S.W.2d loc. cit. 607: 'The evidence shows terrazzo is commonly used as a flooring in lobbies of stores, and the use of brass in providing expansion joints is likewise common in the construction of terrazzo flooring; it has not been considered that terrazzo (with brass expansion joints) as a flooring is inherently dangerous; and defendant is not to be held negligent merely because of the use of terrazzo with brass expansion joints in the construction of the lobby floor. Cameron v. Small, supra, Mo.Sup., 182 S.W.2d 565. It is also seen from the evidence that the use of brass in embedded designs or lettering indicating a trade name or mark, or a name of a store is not uncommon in the terrazzo floors of entrance lobbies of stores; however, brass becomes smooth and highly polished by wear, and, when so, is slippery when wet. Yet, defendant may not be necessarily subjected to liability because the brass so used was slippery and though the plaintiff's fall was occasioned by the dangerously slippery condition of the brass. There is no liability of defendant for injuries from dangers that are obvious, or as well known to plaintiff as to defendant.'

* * * * * *

"Respondent is entitled to the benefit of all the most favorable evidence in support of her case and all of the fair inferences therefrom, but when this is done we do not think it can be justly said that she made a submissible case. * * *"

The majority opinion concedes that the construction and maintenance of the entranceway of terrazzo on an inclined plane does not of itself constitute negligence but asserts that defendant knew of the characteristic of terrazzo to become slippery when wet which imposed the duty to use reasonable diligence and watchfulness for inclement weather and to take precaution against possible injury to its customers. We think the opinion overstates the proposition it was made to demonstrate. The opinion is tantamount to saying that because terrazzo is slippery when wet defendant was negligent in failing to provide precautionary measures to protect against it becoming slick.

The fallacy is in holding that defendant is negligent if it fails to take precautionary measures to protect against wet terrazzo.

132

If wet terrazzo is a hazard to an invitee I see no logic to relieving the defendant from liability to a prospective customer who slipped within three minutes after a snowstorm began and before the proprietor knew or could have known it was wet.

The trouble with the premise is that it assumes that defendant is negligent for having wet terrazzo in its entranceway.

However, plaintiff's witness Caffall testified that wet terrazzo and wet cement are of about the same slickness. I find myself unable to accept the premise that the property owner is burdened with all the responsibility of setting up unlimited precautions against injury to its customers.

In the case of Erickson v. Walgreen Drug Co., supra, this court said [120 Utah 31, 232 P.2d 214]:

"* * * In the instant case the appellant can only be liable *if the terrazzo* floor *when wet* subjected business visitors to an unreasonable risk and the appellant either knew or by the exercise of reasonable care could have discovered that such a condition existed." (Emphasis added.)

The condition requisite to impose liability on the appellant in the Erickson case was "*if* the terrazzo floor *when wet* subjected business visitors to an *unreasonable risk*" and the appellant had actual or constructive notice of such condition.

It does not presuppose that an unreasonable risk always is present when terrazzo is wet. The majority opinion in this case takes for granted that at all times and under all conditions wet terrazzo is slippery and the owner's negligence is established by the fact that he knew it was wet.

In the Erickson case it was assumed that not all wet terrazzo subjects the customer to an unreasonable risk. In this case the majority opinion requires no more than a showing of wet terrazzo and knowledge by the property owner that it is wet to establish negligence. That conclusion does not properly follow.

In my opinion before any negligence can be established on part of property owner it must be affirmatively established that the terrazzo floor was wet, and that by reason of the conditions in the particular case the visitor was subjected to an unreasonable risk.

I cannot subscribe to the proposition that showing that a visitor slipped on wet terrazzo where owner knows it is wet establishes negligence on the part of the property owner.

I am of the opinion that the judgment should be reversed and the action dismissed.

I cannot see wherein plaintiff made a case to go to the jury. Plaintiff had the burden of proving that at the time she fell, slipped or stumbled, the terrazzo entrance was so wet and slick as to constitute a hazard to any customer entering the store.

Plaintiff had also the burden of showing that the slickness of the terrazzo at that moment was such a hazard to plaintiff crossing the same, not carelessly, not hur-

riedly, not without surveying the underfoot conditions, but by the exercise of reasonable care that defendant knew or had it exercised reasonable care could have discovered the hazard.

The testimony fails to disclose that the entranceway ever became so slick and dangerous as to establish defendant's negligence. The evidence fails to establish that the conditions in the entranceway imposed a duty on defendant to take precautionary measures to protect its customers.

When did the entranceway become so dangerous and hazardous, if at all, as to impose liability on defendant for failing to take precautionary steps to protect its customers? Was the so-called· knowledge, actual or constructive requiring defendant to act, first effective at the instant plaintiff fell? Had defendant been charged with knowledge of such a condition as required it to take precautions during the 20 minute period preceding plaintiff's fall? When was the earliest point of time prior to plaintiff's fall that defendant would have been liable had a customer fallen? How and by what proof are these facts established? By the speculation and conjecture of the jury, or should the court pass upon the same as a matter of law where there is no evidence, as here, to be submitted to the jury?

The fact that plaintiff fell does not establish either the negligence of defendant or that the slickness of the terrazzo was the proximate cause of her (plaintiff's) injury.

In my opinion plaintiff failed to establish that she fell because of the slickness of the terrazzo and failed to establish that slickness of the terrazzo constituted a hazard to defendant's customers requiring the defendant to take measures to protect them.

Plaintiff offered no evidence, other than the fact that she fell, to show that the entranceway had become so slippery as to constitute defendant negligent in failing to take precautionary measures. It is undisputed that there was an abrasive in the terrazzo at the defendant's entrance. The testimony of Dr. Harris to that effect is not refuted or even questioned, in any manner.

It is admitted that the presence of such abrasive lessens the slickness. There is undisputed evidence that the terrazzo entrance was no more slippery when wet than the sidewalk in front of the J. C. Penney Co. store. On direct examination plaintiff's witness Mr. Caffall testified:

"Q. Can you compare for us the, with respect to degrees of slickness, the wet terrazzo surface, with other commonly-known surfaces with which you are acquainted; for example, ordinary cement? A. Well, ordinary cement and terrazzo would be very similar.

"Q. How would they compare in slickness when wet? A. Very similar."

Nor did the testimony of plaintiff support any conclusion that the entranceway was slippery. She testified:

"A. I was just walking along normally, minding my own business, and *I noticed the floor was wet,* but never thought about it being slick or anything like that.

"Q. And what happened? A. And the next thing I knew, I was down after I had gone two or three feet inside the entrance."

Plaintiff offered no evidence tending to show any condition other than the fact that the entranceway was wet which shows no negligence on defendant's part. The way was lighted. If defendant was .charged with knowledge that wet terrazzo is slick so is plaintiff. It is clear that plaintiff knew the entranceway was wet, there is no evidence that the defendant had that knowledge.

We are not at liberty to assume that plaintiff was' not possessed of normal faculties. I am of the opinion that plaintiff could not fail to know from her experience in her bathroom and kitchen that tile or linoleum is more slick when wet. Nor can we charge plaintiff with such lack of observation as to fail to know that the pavement, over which she walked more than 700 feet on the night in question, is much more slick when wet. Her fall cannot be reconciled on any other than her own lack of ordinary care for her own safety. Her tes-timony that as she walked along she noticed that the floor was wet *"but never thought about it being slick or anything like that"* shows a want of due care. When she saw it was wet she was negligent to fail to exercise due care for her own protection. In my opinion the only negligence shown from the testimony was the negligence of plaintiff.

The conclusion is inescapable that plaintiff did not believe the entranceway was wet enough to constitute a risk or hazard; probably she was right. There is no evidence in the record to support any such conclusion nor to justify submitting the case for the jury to find that there was any hazard.

Plaintiff's own testimony warrants denial of her claim that defendant was negligent. Plaintiff was apprised of the weather conditions outside the store. It was not shown that defendant had any knowledge of the weather conditions. It might well be assumed that if customers entering the store found the entrance dangerously slick they would have reported that condition to the clerks who waited on them. The court without a scintilla of evidence indicating that defendant even knew it was storming, let the jury answer the question as to whether defendant knew it was storming and upon their guess to build out of whole cloth the further conclusion that defendant knew if it was storming that the entranceway must be wet; and if the terrazzo was wet it must be slick and if it was slick it

was a hazard to customers including plaintiff, and therefore if plaintiff fell defendant was negligent and defendant's negligence was the proximate cause of plaintiff's fall and injury.

As observed by the majority opinion many patrons enter defendant's store during business hours. No evidence was offered that any other person who entered the store before or at the time plaintiff entered had slipped, nor did plaintiff offer any testimony that anyone had slipped between 1936 when the terrazzo was laid and the time when plaintiff fell.

Plaintiff failed to show that the entranceway contained any hidden or latent danger; there was no showing of any imperfection in the surface. The only showing made was that it was wet. There was no evidence that it was unreasonably slick. In fact, the only testimony of any expert or person who knew was Dr. Harris and he testified as to having tested the terrazzo and that it was provided with what was considered the proper treatment, to wit: carborundum. Plaintiff did not have on rubbers, she did not show that the wet shoes she was wearing were conducive to her safety.

In Sherman and Redfield on Negligence, Revised Edition, Vol. 4, sec. 798 at p. 1826, the statement is made:

"Water, slush and mud, tracked in upon a floor by reason of weather conditions outside, although it renders the floor wet, dirty and slippery does not ordinarily create an actionable situation. A wet and sloppy condition of the floor may be necessarily incidental to the business or activity in question."

In the case of Sears, Roebuck & Co. v. Johnson, 10 Cir., 91 F.2d 332, 333, the plaintiff, Johnson, slipped on an allegedly wet and slippery floor of defendant's. Plaintiff alleged that defendant carelessly and negligently allowed and permitted the floors at the head of the stairway leading to the basement to become wet and slippery, and permitted the lights to become out of order, and that said slippery and unlighted condition was allowed and permitted for *a period of more than four hours,* and that by reason of such carelessness and negligence on part of defendant in permitting the floor to become wet and slippery, "caused a dangerous condition, which was either known *to these defendants or should have been known to them had they exercised ordinary care* for the safety of others, and which condition was hazardous to this plaintiff * * *." Plaintiff alleged that it was defendant duty to see that the floor was in a safe condition, and that defendant failed to perform said duty; as a result of which plaintiff stepped upon the wet and slippery floor which caused plaintiff's fall. The court made the following ruling, "The trial court should have sustained defendant's motion for a directed verdict in its favor. Its judgment is reversed with instructions to grant the appellant a new trial." The court used this language:

"From the record, it appears that when it is raining in said city, some water is usually carried into stores by parties going in and out, and that those coming in from without on a wet day have wet shoes.

"It is just as reasonable to infer that plaintiff slipped because of wet shoes as on account of a damp floor.

\*　　\*　　\*　　\*　　\*　　\*

"There was no evidence on part of plaintiff that her shoes were not wet, and that information was peculiarly within her knowledge.

\*　　\*　　\*　　\*　　\*　　\*

"The fact that invitee may have slipped on the floor of the store did not *shift to defendant burden of establishing that accident did not occur through its negligence, nor create* presumption of negligence. The presumption is that defendant exercised reasonable care, as respects liability for injury to plaintiff on account of slipping on floor. Defendant was not an insurer against accidents to persons entering the store for making purchases or otherwise on invitation." (Emphasis added.)

In Brunet v. S. S. Kresge Co., 115 F.2d 713, 714, plaintiff recovered a judgment. Appellant moved for a directed verdict at close of appellee's evidence, and again at close of all the evidence. The circuit court (7th circuit) reversed the judgment and directed a dismissal of the case on the mer-

its. The evidence disclosed that appellee started down the stairs to the basement to obtain lunch. She was wearing galoshes over her shoes. As she started down the steps, noticing that they were muddy and slippery, she took hold of the banister to keep from falling, but as she reached the fourth or fifth step from the top, her foot slipped and she fell. The court observed:

"The sole charge of negligence here is that appellant permitted its stairway to become and remain slippery and wet and in a dangerous condition. There was no charge of any defect in the stairs, or that they were not properly lighted at all times. *The slush and snow were not placed there by the act of appellant, but were tracked in by customers.*" (Emphasis added.)

The court referring to a case decided by the Illinois court observed:

" \* \* \* Confronted by facts somewhat similar to those of the case at bar, the Illinois Appellate Court in Murray v. Bedall Co., 256 Ill.App. 247, held that the trial court should have directed a verdict in favor of the defendant. The fall there occurred in the vestibule instead of on the stairway just inside the entrance as here, but we do not consider that a significant distinction. The court there seems to have based its decision on the fact of comparative knowledge of the parties, saying,

" 'From the testimony of the plaintiff it is apparent that the danger, if any, was clearly evident to her, as well as the defendants, and that she was aware of the condition and of the possibility of sustaining a fall before she undertook to pass over and along the floor space of the vestibule.

" 'The condition described by the witnesses is one that is not only not unusual, but is customarily to be found on such days as described in the testimony, in vestibules of this character and the sidewalks and the premises surrounding entrances to public places. * * *

" 'In the case at bar the *plaintiff was as well apprised of the condition existing in the vestibule as the defendant,* and should be held to as high a degree of care for her own safety as would be required of the defendant.' [Emphasis added.]

\* \* \* \* \* \* \*

"We think the facts as proved by appellee fail to disclose such a lack of reasonable and ordinary care in the maintenance and supervision of the premises as to render appellant liable for her accident. In the words of the Circuit Court of Appeals for the Tenth Circuit in another case involving a fall on rather dark stairs wet from tracked-in water:

" 'If what was shown in this case was sufficient to permit recovery, it would require store owners to have a mopper stationed at the doors on rainy days for the sole purpose of mopping up after every customer entering or leaving the premises. Every store owner would be required to be an insurer against such accidents to public invitees who came in on rainy days with wet shoes.' Sears, Roebuck & Co. v. Johnson, 91 F.2d 332, 339."

In Parsons v. H. L. Green Co., 238 Iowa 648, 10 N.W.2d 40, 41, plaintiff brought an action for injuries alleged to have been sustained by falling in defendant's store. At the close of plaintiff's testimony the court sustained defendant's motion for directed verdict, and plaintiff appealed. The Supreme Court of Iowa referred to the heavy storm on the day in question and that plaintiff entered the store and started down the stairs to the basement and observed:

" * * * The stairs were of cement with small pieces of tiling in them and were smooth. Plaintiff was carrying a sack of groceries in her left arm and her purse in her right hand. *There is testimony that the stairs were slushy and wet and that soft snow had packed thereon, which made the steps wet and muddy.* There was also testimony that about half way down the steps plaintiff slipped, fell and was injured.

\* \* \* \* \* \* \*

"No such inherently dangerous condition is shown in the case at bar, nor

is there such actual or constructive notice as is required to hold defendant liable. In order that there shall be liability, there must be some evidence of notice of the existing condition, either actual or constructive, *and in such time that the defendant in the exercise of ordinary care could have remedied it.* [Citing cases.] No evidence of such knowledge appears in the record.

\* \* \* \* \* \* \*

"*There is no such showing here of negligence as would authorize the submission of such question to the jury.*" (Emphasis added.)

In Knopp v. Kemp & Herbert, 193 Wash. 160, 74 P.2d 924, 925, a verdict was directed for defendant and plaintiff appealed. The facts disclosed by the opinion show that plaintiff slipped on the terrazzo floor of arcade outside defendant's store, but between the sidewalk and the store entrance. The sidewalk in front of the store is of cement. Along the inside of the sidewalk where it joins the terrazzo rows of small blocks of glass about two inches square are set in the cement. The sidewalk in front of the store was wet and slush or water had slopped over on the terrazzo floor where it joined the cement sidewalk. As plaintiff stepped on the terrazzo she slipped and fell. The Supreme Court of Washington observed:

"It is alleged that the terrazzo floor is very smooth and becomes exceedingly slippery when wet, is dark in color, and, when wet and tracked over by people entering the store, becomes so similar in appearance to the cement sidewalk that the ordinary person entering the arcade would not observe that he was passing from one type of floor to another, and for this reason the place presented a pitfall or trap to persons using the entrance in the manner for which it was designed and intended.

"Mrs. Knopp testified that she was wearing rubber galoshes at the time; that the muddy water from the sidewalk had been tracked in toward the door so that the cement of the sidewalk and the terrazzo looked all the same color. \* \* \*"

Mr. Rasque, an architect, testified that he had examined the floor where the accident happened and several other floors, and that this was more slippery than any of the others. He testified that the arcade floor was too smooth a surface to be used for outside terrazzo work. That in good practice for designing or constructing all terrazzo floors for exterior, they add an anti-slip mixture or abrasive such as carborundum.

The court said:

"The law requires a storekeeper to maintain his storeroom and the entrances thereto in such a condition as a reasonably careful and prudent storekeeper would deem sufficient to protect customers from danger while exercis-

·ing ordinary care for their own safety. * * *

"The testimony of Mr. Rasque, to the effect that this floor, though suitable for an inside floor, was 'too smooth' for outside use, is a mere expression of personal opinion and furnishes no fact or data which would enable the jury to find that the floor was so smooth as to be actually dangerous, or that its maintenance constituted negligence. In fact, one cannot even be sure from Mr. Rasque's evidence, that he considered it so, although he unquestionably made it plain that he thought it would have been safer had it contained a great proportion of abrasive material."

"The decisions of this court, as well as the decisions of other courts, have very generally denied recovery in cases where persons have fallen on smooth floors even when they are made slippery by the presence of wax or water. * * *"

The majority opinion proceeds to the conclusion that because the entranceway was of terrazzo and because it had become wet it created a situation which involved an unreasonable risk to plaintiff. The case of Brody v. Albert Lifson and Sons Inc., 1955, 17 N.J. 383, 111 A.2d 504 is cited and commended as authority.

That case is important because of the difference in the fact situation from the instant case. There was expert testimony in the New Jersey case, which was not disputed, that there was no abrasive material in the terrazzo vestibule of the defendant and that the terrazzo upon which Sara Brody fell was slippery when dry and ·if water was applied it would become much more slippery.

The case is not in point. Here the undisputed evidence is that the terrazzo in the entranceway to J. C. Penney Co. had an abrasive in it.

It is submitted that the cases herein mentioned and discussed would warrant our holding that plaintiff failed to make out a case and that the judgment should be reversed and direction given that the action be dismissed.

I am unable to see wherein plaintiff established that she was subjected to an unreasonable risk; if it be assumed that the entranceway, at the time in question, subjected her to an unreasonable risk, she failed to show that the defendant had knowledge of the condition. She likewise failed to show that the defendant should have known of the unreasonable risk, unless it charged her with knowledge of the weather condition. The record is completely devoid of any evidence that could charge defendant with the duty of making any inquiry as to the weather conditions. Elapse of time after the rain started alone is not sufficient. An examination of the record in my opinion fails to disclose any negligence of defendant but would warrant a finding that plaintiff was negligent—and that plaintiff alone was negligent.

She testified that on the night in question she was wearing black suede pumps; she was not wearing rubbers or galoshes. The pumps that plaintiff was wearing were offered and received in evidence. They are completely open over the entire top; no strap or lace in any way fastens or tends to hold the shoe to the foot, and there is nothing to prevent play of the foot within the shoe. The heel where fastened to the shoe has a width of approximately one and one-half inches, and is three and one-half inches high measured from the rear or back of said heel. The tip or bottom of the heel is approximately ⅞ of an inch in width. The heel itself is made of wood with a covering of suede. On the bottom of the heel is a leather tip fastened to the heel by small nails. The tips of both heels are worn so that the nails are sheer with the bottom of the leather tip, so that in walking the metal or nails in the tip come in contact with the sidewalk or terrazzo.

In my opinion plaintiff did not establish what was required—that she fell because of the slickness of the terrazzo. Can we say that the slick terrazzo and not the plaintiff's pumps caused her to fall?

Plaintiff failed to proffer evidence to show that the terrazzo when wet was slippery to the point of being a hazard. Her falling did not establish that fact. Plaintiff did not do what I opine was required—to wit, show that others had fallen. We know others preceded her into the entranceway—in fact, she claims to have fallen because of the water tracked in from the street by others who preceded her. Her fall may as well have resulted from the three and one-half inch heels she was wearing or the fact that she was hurrying to get out of the storm, she testified that she had her hand over her head to keep her hair dry; it may have been mere carelessness—certainly she failed to show it was a result of defendant's negligence.

Our rule in such cases should be this:

Unless and until a plaintiff shall allege conditions connected with the slip that show something more than a fall and a slick entrance which plaintiff could see as well as defendant, and as well as the thousands of others that traversed the entranceway without mishap—and until evidence is offered showing defendant guilty of more than having a wet and slippery entranceway to its place of business, the case should be disposed of either by judgment on the pleadings or if sufficient is alleged but not proved, by a directed verdict.

There was no evidence tending to show that defendant knew or should have known, by the exercise of reasonable care, that it was raining. Was defendant under the duty of stationing an employee at the door to learn if it rained or snowed? Should defendant have an employee step out at given intervals of time—10, 15, 20, 30 or 60 minutes to check the weather? I fail to find in the evidence any fact which justifies charging defendant with knowledge that the terrazzo had become wet.

No judge could find such supporting evidence—that could be found only by the speculation of a jury.

The majority opinion suggests that between the beginning of the storm and plaintiff's fall could have been 25 to 30 minutes, "during which time it was, of course, observable by the defendant's employees out of the windows." What windows? There is no evidence of any windows other than display windows. This was a dark night, the last day in November, after 8 p. m. I submit that *reasonable minds* could not find from the evidence that defendant knew the terrazzo was wet or that any fact or facts were disclosed to charge defendant with having such knowledge by the exercise of reasonable care.

The fallacy of the reasoning of the majority opinion is demonstrated in these statements:

"The essential inquiry relating to defendant's negligence is whether in performing its duty of due care just recited, it knew or should have known, that *a dangerous condition existed* and whether *sufficient time elapsed thereafter* that, in due care, it should have put out the mats or sprinkled feldspar on the surface to reduce the slipperiness" and

" * * * was there sufficient time after the storm commenced that it should reasonably have been expected to put out the mats or feldspar to re-duce the slipperiness?" (Emphasis added.)

The opinion assumes that a dangerous condition existed in the entranceway notwithstanding a complete absence of evidence of that fact. Nor is there any evidence that the entranceway was not reasonably safe. Then without establishing the first premise of defendant's liability—a dangerous entranceway—the opinion with the smoothness of automatic transmission proceeds to the second point—defendant's knowledge of the non-existent hazard—and with the same ease of locomotion concludes that 25 to 30 minutes after it started to storm the defendant is charged with the duty of sprinkling feldspar or putting out mats.

Let it be assumed that defendant had spread feldspar or put out mats before the storm started—before any wet was tracked into the entranceway—would it not be conceded that no dangerous condition existed?

The opinion ignores the undisputed evidence of plaintiff's witness that the same result is accomplished—reducing slipperiness—by putting an abrasive such as carborundum in the mixture when laid; and the evidence is undisputed that the terrazzo in question had an abrasive in it.

Unless the last mentioned evidence is completely ignored, the conclusion reached is not possible and no proper case could be made for the jury.