394 P.2d 876

**Franklin Duane ROBISON, Plaintiff and Appellant,**

v.

**Allison ROBISON and Thorpe Robison, Defendants and Respondents.**

**No. 10034.**

Supreme Court of Utah.

Aug. 17, 1964.

(1957); see also: Kelley v. John, 162 Neb. 319, 75 N.W.2d 713 (1956) and 5 Utah L.Rev. 414 (1957).

Woodrow D. White, Dwight L. King, Salt Lake City, for appellant.

Hanson & Baldwin, Rex J. Hanson, Salt Lake City, for respondents.

McDONOUGH, Justice:

Plaintiff sued to recover for injuries suffered when he was struck on the head by rocks from a dynamite blast exploded by the defendants in constructing an irrigation ditch. Upon the basis of depositions of the plaintiff and two eye witnesses, the trial court granted defendants' motion for sum-

**4**

mary judgment[1] on the grounds (a) that plaintiff assumed the risk; and (b) that he was contributorily negligent as a matter of law. Plaintiff appeals.

On May 1, 1962, the defendants were working on their farm near the town of Flowell, Millard County, constructing an irrigation ditch along a hillside that was so rocky that they had to blast with dynamite. The plaintiff operates an adjoining farm and contends that he has something more than the passing interest of neighborly curiosity in the ditch project because he gets irrigation water from the same source. During the morning he rode his horse over to see how it was progressing and returned home. Later in the day he again rode over at a time when the defendants and Nolen Jackson, who was working with them, were attempting to blast a large rock formation out of the ditchway. He entered into the activities himself to some extent by suggesting that instead of placing the dynamite on the surface and covering it with mud, they should drill into the rock and place the charge. He took a crowbar and attempted to drive a hole in the rock, but failed.

Defendants then continued to operate as they had prior to plaintiff's advice. Two or three unsuccessful explosions took place. In preparation for the next one, plaintiff suggested that they place some rock on top of the set, and the evidence is in dispute as to whether he helped place some of the rock. After the charge was prepared he rode his horse about 450 feet away. The others drove their trucks into the same area and remained in them, while plaintiff stayed on his horse. The explosion threw rock fragments, one of which struck plaintiff on the head causing him the injuries of which he complains.

Plaintiff relied on allegations of negligence and also upon the rule of absolute liability: that one who uses or is responsible for a dangerous instrumentality is absolutely liable for any resulting damage.[2] Whether dynamite is such a dangerous instrumentality depends upon the circumstances. Used in a crowded city, it of course would be; whereas, using it on a remote area where there is little or no possibility of injury to others, it would not.[3] In doubtful situations between those extremes the problem must be resolved by the answer to the question as to whether the user should reasonably foresee that others might be injured. It is to be observed that even where the circumstances justify its application, this so-called rule of absolute liability has the weakness of most generalities. There are almost always exceptions which prove them fallacious. A

1. Rule 56(c) U.R.C.P.
2. That doctrine is recognized in Utah see: Madsen v. East Jordan Irr. Co., 101 Utah 552, 125 P.2d 794 (1942).

3. See Restatement Second, Torts, Draft No. 10, § 520.

commonly used example is the application of the rule to the keeping of a wild animal, such as a chained bear. But if the person injured has deliberately teased the animal, or been so reckless of his safety as to practically invite injury, he cannot recover.[4] It will thus be seen that the so-called rule of "absolute liability" is not absolute at all. Both the propriety of its application in the first instance, and any defenses against it, are conditioned by the limitations imposed by the fundamental standard which pervades all tort law: the conduct of the reasonable prudent man under the circumstances; and its procedural corollary, that whenever there is dispute in the evidence, or uncertainty therein, as to whether that standard is met, the question is for the jury to determine.[5]

██ On the issue of assumption of risk, the position of the defendants is that inasmuch as plaintiff was aware of the blasting with dynamite, and was under no necessity of remaining there, but nevertheless chose to do so, and in fact participated in the activity himself, he assumed the risk of the injury which occurred. They maintain that this conclusion is so clear and certain that reasonable minds could not differ thereon, and that accordingly, the trial court was justified in so ruling as a matter of law.

The ruling undoubtedly would be correct if the evidence demonstrated those facts to that degree of certainty.[6] However, conversely, where the evidence is such that reasonable minds could differ as to whether plaintiff voluntarily assumed the risk of injury, the issue should be determined by the jury.[7] There can be no doubt that plaintiff and all of the participants here were apprehensive of danger. This is evident because the defendants and Mr. Jackson drove in pickup trucks about 450 feet away from the explosion. It is reasonable to suppose that this represented their judgment as to how far away they should go to be safe. The plaintiff rode his horse away the same distance. It seems to the writer an understatement to say that it is at least arguable that the evidence shows that the plaintiff did not desire to assume any risk of harm, but on the contrary, took such measures as a prudent person would to guard against it by placing what he thought was a safe distance between himself and the explosion. Further, he may have been reassured in so thinking by the fact that the others stopped at about the same distance.

██ Under the circumstances deducible from the evidence, viewed in the light most favorable to the plaintiff, as it must be on

4. Ibid., § 515, comment e.
5. See Newton v. O. S. L. RR. Co., 43 Utah 219, 134 P. 567; DeWeese v. J. C. Penney Co., 5 Utah 2d 116, 297 P.2d 898, 65 A.L.R.2d 399.

6. For elements of assumption of risk, see Jacques v. Farrimond, 14 Utah 2d, 166, 380 P.2d 133.
7. Cleveland-Cliffs Iron Co. v. Metzner, 6 Cir., 150 F.2d 206, is a closely analagous case so holding.

**6**

summary judgment against him, it appears that the questions whether he should have remained on the premises at all, whether he retreated a proper distance, and whether he should have dismounted from his horse and gotten into or behind a truck, are all facets of his conduct which relate to the question as to whether plaintiff should be deemed to have assumed the risk of the injury he suffered. Closely related is the question as to whether his conduct should be deemed so careless of his own safety that he should be precluded from recovery.[8] It is our opinion that these are questions about which there is sufficient uncertainty that reasonable minds might differ as to their conclusions thereon. It follows that the plaintiff should be afforded the opportunity he seeks of presenting the disputed issues in this case to a jury for determination.

The summary judgment is vacated and the cause remanded for trial. Costs to plaintiff (appellant).

CROCKETT and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent, unable to conclude that this is a jury case. The main opinion concedes that there is a different standard of care in explosive cases, illustrating the difference by mentioning crowded cities and remote areas. Flowell, in Millard County, is about as remote as you can get. By the test mentioned, I am of the opinion that the defendants had little or no duty of care to one who kibitzed at the scene of the blasting, then rode off on his mount after the fuse was lit. One certainly wouldn't expect the defendants to measure the distance plaintiff retreated before he reined in his horse, divine the linear footage he had traveled, make a hurried guess that he had not retreated far enough, assume that he would not dismount and then take the dangerous gamble of rushing in to douse the fuse, in a perilous effort to purge themselves of a charge of negligence.

The plaintiff knew what was going to happen, but nonetheless stopped traveling and sat on his horse without any effort to protect himself from rocks that might fall on his head in the immediate area. It is true defendants retreated about the same distance but they took the precaution of sheltering themselves inside the truck. They did not in any sense assume the same risk that plaintiff did, and it seems to me that the

---

8. See Prosser, Torts, § 60, pp. 342–43 (2d Ed. 1955): "[T]he kind of contributory negligence which consists of voluntary exposure to a known danger, and so amounts to assumption of risk, is ordinarily a defense [to strict liability] * * * [W]hen the defendant's activity is a dangerous one imposing strict liability, such as blasting, a plaintiff who has discovered the danger will be barred from recovery by his own 'wanton, wilful or reckless misconduct which materially increases the probabilities of injury,' or what amounts to 'invitation to injury, or at least indifference to consequences.' " [citing cases.]

main opinion's implication that they were exposed to the same risk is a complete non sequitur. Also, it seems to me that with reference to the bear example, the plaintiff did have a bear by the tail, and voluntarily assumed the consequences.[1]

The law of strict liability, I take it, does not allow for pure speculation by a jury as to reasonableness of one who does not come in out of the rain,—of rocks, in this instance, —when he should know of the impending inclemency.

Any speculation in this respect, under the facts of this case, indicate to me that violence to the facts of this case would be done where the rain fell on a curious sidewalk superintendent, who voluntarily took a chance on what happened, and it did.

I would sustain the trial court on his assumption of risk conclusion, and I think a good argument could be pursued to sustain the contributory negligence conclusion also reached.

CALLISTER, J., concurs in the view expressed in the dissenting opinion of HENRIOD, C. J.

---

1. For the bear analogy, the main opinion cites Restatement Second, Torts, Draft No. 10, Sec. 515, Comment (e). Let's take the same work and cite Sec. 523(e) where it is said that "Likewise the risk is commonly assumed when the plaintiff, knowing that the activity is being carried on, and aware of the risk which it involves, voluntarily proceeds to encounter the risk by coming within range of it. Thus, one who voluntarily enters land on which he knows that blasting is going on, and so brings himself within range of the abnormal risk which he knows to exist, must be taken to assume the risk of harm resulting from unpreventable miscarriage of the activity, although he does not assume the risk of any negligence in the operation unless he knows of it." (Note: This is re-

---

cited, not as any authoritative expression in support of the dissent, but to illustrate that the reference to the bear, citing this same work, is inapropos here

since refuted by the very work cited in cases of blasting, not bear-biting.)